JOHN V. FARWELL ET AL.

v.

PEHR W. NILSSON ET AL.

*Creditor's Bill—Insolvency—Preferences—Judgment by Confession—Fraud—Constructive Assignment—Act of 1887.*

Farwell v. Nilsson.

1. The act of 1887 only prohibits preferences set forth in deeds of assignment; the form thereof if adequate cuts no figure.

2. Before a court of equity has jurisdiction to prevent frauds upon such act, and to treat transfers as parts of an assignment, there must be the execution of an instrument which creates a trust for the benefit of creditors.

3. A debtor in failing circumstances not seeking the benefit of the assignment law, may prefer creditors by giving to one or more of them, judgment notes, by which they are enabled to satisfy their claims out of the debtor's property by the appropriation of all his assets, although to the exclusion of other creditors.

[Opinion filed December 24, 1889.]

APPEAL from the Circuit Court of Cook County; the Hon. LORIN C. COLLINS, Judge, presiding.

Appellant filed a creditor's bill in which, after alleging the recovery of a judgment against said appellee Nilsson, and the return of an execution issued thereon, no part satisfied, it is further alleged, that April 5, 1888, and for some time prior to that date, the defendant Nilsson, was engaged in mercantile business in the city of Chicago, and on that date, and for a long time prior thereto, but for how long complainants are unable to state, said Nilsson was wholly insolvent and unable to pay his debts; that knowing his said insolvent condition and that he could no longer continue in the business, and would shortly be obliged to yield the control and possession of his property to his creditors, he set about arranging his affairs with that end in view. Knowing that if he made a general assignment for the benefit of all his creditors in the usual and regular form, he would not be able legally to incorporate into such assignment, preferences for any of the creditors above the others, and desiring to accomplish substantially the same result, he devised a scheme whereby fraudulently to avoid the effect of the assignment law of this State, and to enable certain of his creditors to secure an unfair and unlawful advantage over the others in the distribution of his property. In pursuance of this scheme said defendant, well knowing that such preferences were sufficient to exhaust the

whole of his assets, and that by such preferences all the other
creditors would be deprived of any share in his property,
caused judgments to be entered against himself by confession
in the Superior Court of Cook County, upon the 5th of April,
1888, in favor of the following named defendants, for the
amounts set opposite their respective names, to wit: (setting
out the names of the co-defendants and the amount of the
judgment of each.)    That said defendant Nilsson caused exe-
cutions to be issued forthwith upon said judgments, and had
the same placed in the hands of the sheriff of Cook county to
execute; that under said executions on the same date, the
sheriff levied upon the stock of goods belonging to said
defendant, that being all of the property subject to levy, and
sold the same under said executions on the 16th and 17th of
April, 1888, realizing therefrom $6,571.25, which amount was
all applied upon said executions, and paid to said execution
creditors, respectively, by said sheriff.

That said defendant Nilsson caused said judgments to be
entered, and said executions to be issued in pursuance of a
plan to turn over and assign all his property to a small
number of his creditors, and fraudulently to exclude and
deprive his other creditors of any share in his property or of
any benefit of said assignment; that said confessions of judg-
ment were in effect but one act, although carried out in a way
intended to avoid the outward appearance of a formal and
statutory assignment, and that the same constitute a general
assignment for the benefit of all creditors within the true
meaning and intent of the assignment law of this State; that
said preferences in said assignment in favor of said judgment
creditors were each of them fraudulent, illegal and void as to
your orators, and the other *bona fide* creditors of said Nilsson.
That said judgments were so confessed by said Nilsson while
he was, and knew himself to be wholly and absolutely insolv-
ent, and about to quit business, and that said judgments were
fraudulent, illegal and void as preferences in said assignment,
and constituted a fraud upon the rights of said defendant's
*bona fide* creditors.

The bill waives answer under oath, and prays that the con-

Farwell v. Nilsson.

fessions of judgment and execution levies may be declared to be a part of one transaction and plan, and to constitute both in law and in fact an assignment by said Nilsson for the benefit of all creditors within the true intent and meaning of the laws of this State in that behalf; and that said judgments, executions, and the pretended liens thereof may be vacated and set aside, and the property covered thereby administered by said court for the equal benefit of all the creditors of said Nilsson; that a receiver may be appointed, and that defendant may be required to turn over to such receiver all of his property, and that the judgment creditors, who are made defendants herein, may each be required to account for and pay over to said receiver all moneys realized by them, respectively, from the transaction above set forth, to be distributed among the creditors of said Nilsson, and that complainants may have general relief.

Nilsson demurred to the bill, assigning as a special ground of demurrer that it does not appear from the allegations therein that he ever intended to make a voluntary assignment for the benefit of all his creditors, or that he performed any act at or before the entry of said judgments, which would confer jurisdiction on this or on any other court to declare the judgments fraudulent or void as against complainants. The court sustained the demurrer and dismissed the bill for want of equity, and complainants bring the record to this court by appeal and assign the action of the court in sustaining the demurrer as error.

Messrs. TENNEY, HAWLEY & COFFEEN, for appellants.

Mr. EMERY S. WALKER, for appellees.

The case of White v. Cotzhausen, 129 U. S. 329, affords the only foundation for this proceeding. The opinion of Justice Harlan goes much farther than the case of Preston v. Spaulding, 120 Ill. 208, which was quoted by him, and referred to by appellants in the case at bar, in support of their bill.

The case of Schroeder v. Walsh, 120 Ill. 403 (in view of the fact that the opinion was filed the same day, and written

by the same judge as the opinion in the case of Preston v.
Spaulding) affords the best answer to the proposition of
appellants, that the Supreme Court of the United States fol-
lowed the decisions of our Supreme Court.

In the case of Schroeder v. Walsh, it was said by our
Supreme Court: * * * "In the absence of any bank-
rupt law or statute to the contrary, the law is well settled
that a debtor in failing circumstances, not seeking the benefit
of the general assignment law, may prefer one creditor to
another equally meritorious, if done in good faith. * * *

"The statute relating to assignments by debtors for the
benefit of their creditors, and prohibiting preferences in such
assignments, has no application to cases of this kind. Notwith-
standing that statute, the debtor may pay one creditor in full,
either in money or by the sale of his property.

"That act applies only to conveyances of property to an
assignee or trustee in trust, to convert the same into money
for the benefit of the creditors of the assignor, which can now
only be made under that law."

Justice Harlan does not refer to this opinion, and it is not
likely that his attention was directed to this case. Assuming,
as he does, to follow the decisions of our courts, he could not
reconcile the opinion in this case with his own.

In the case of White v. Cotzhausen, the lower court set
aside certain conveyances and confessions of judgment for the
want of *bona fide* consideration. The question of the appli-
cation of the provisions of the assignment act was raised for
the first time, when the case was argued in the United States
Supreme Court. There were several instruments executed
by which actual transfers of property were made. In this
respect the case differs from the one presented by the allega-
tions in the bill filed in the case at bar.

MORAN, J. The question presented by this case and argued
by counsel is, whether a debtor who is in failing circumstances
may prefer creditors by giving to one or more of them judg-
ment notes, by which such creditors are enabled to satisfy their
claims out of the debtor's property to the exclusion of other
creditors, and by the appropriation of all the debtor's assets.

Appellant's contention is based upon what is claimed to be the proper construction of the voluntary assignment law of this State, known as act of 1887, and the argument is that as that act declares that every provision in any assignment providing for the payment of one debt or liability in preference to another, shall be void, it effectually inhibits the debtor who is insolvent, from paying any creditor what he owes him by turning out or transferring property to him, or by giving him a judgment note, which will enable him to subject all the debtor's property to the payment of his debt, to the exclusion of other creditors of such insolvent.

The right of a debtor to pay one creditor in preference to another, or to turn out property in satisfaction of, or to create a lien upon it, for the security of a particular debt, in preference to, and to the exclusion of, other liabilities, always existed at common law.    And this right of preference might be exercised by the debtor when making a general assignment, in this State, prior to the passage of the act of 1887, as has been repeatedly decided by the Supreme Court.    That act does not purport, by its terms, to regulate or prohibit preferences generally, but only preferences in an assignment; that is, preferences written in an assignment, or created by such instrument or device, and under such circumstances, as authorize them to be read into the assignment and treated as void, as being part thereof.    The word assignment, had at the time this statute was adopted a well defined meaning understood by all the people, and it has no different meaning in said act.    To quote from the opinion of Mr. Justice Magruder, in the case of Farwell v. Cohen, recently decided (21 Legal News, 359): " According to the common acceptation of the term it is a transfer without compulsion of law by a debtor of his property to an assignee in trust to apply the same, or the proceeds thereof, to the payment of his debts and to return the surplus, if any, to the debtor.    As to the form and contents of it, it has always been understood in this State to be a written deed of conveyance, executed by the assignor as party of the first part to the assignee as party of the second part, reciting the grantor's indebtedness and inability to pay, and conveying

his property, real and personal, by apt words of sale and
transfer, to the assignee in trust, to take possession of and
sell the same, and to collect the outstanding debts, and out of
the proceeds to pay the creditors."

It was preferences in instruments, such as above described,
that the Legislature intended to prohibit. The mere form of
the instrument is, no doubt, immaterial, provided the opera-
tion of it is to create a trust in the property conveyed for the
benefit of creditors, and if such is the purpose and design of
the instrument, then any preference in it, or which by con-
struction of the law, forms a part of it, is in fraud of the statute
and void. The object of the law was to prohibit discrimina-
tion by a debtor making a voluntary assignment, in favor of
particular creditors, and it is not preference of a creditor itself
that is condemned but a preference as a feature of such
assignment.

Certain language in the opinion of the court in Preston v.
Spaulding, 120 Ill. 208, is relied on to support the contention
of appellant that the assignment in which preferences are for-
bidden is such transfer, taken as a whole, whether made up of
one or many acts, by which an insolvent debtor divests him-
self of substantially all his property, and yields control of it to
one or more of his creditors. The facts of that case called for
no decision which would support counsel's contention in this
one.

There was there a formal voluntary assignment, and the
question was whether judgments given to favored creditors after
the debtors had formed the determination of making such
assignment, with the intent of preferring such creditors, were to
be treated as part of the assignment. But aside from the rule
that the language of an opinion is to be confined to the facts
of the case which the court is considering, it will be found
that the learned and discriminating judge who wrote it, in that
case carefully avoided the implication that preferential trans-
fers by an insolvent debtor, not connected in act and intent
with an assignment, were forbidden by the law. It is in the
opinion stated in terms that "this act does not assume to
interfere in the slightest degree with the action of a debtor

Farwell v. Nilsson.

while he retains the dominion of his property. Notwithstanding this act he may now, as heretofore, in good faith sell his property, mortgage or pledge it to secure a *bona fide* debt, or create a lien upon it, by operation of law, as by confessing a judgment in favor of a *bona fide* creditor."

Confessing a judgment in favor of one creditor will create a lien on all the property of the debtor, and to satisfy such judgment may exhaust all the assets of the debtor and leave him without any property to apply to his other debts. If he may confess judgment in favor of one creditor, why may he not do so in favor of a dozen, and if such judgments are confessed for debts *bona fide due,* how can the knowledge on the debtor's part that his entire estate will be required to discharge such judgment debts, or his intention to create a preference in favor of such creditors over others, by confessing judgments, render his act fraudulent? He has done in good faith that which the common law always permitted him to do, and what the Supreme Court has said the statute does not assume to interfere with in the slightest degree. But it is said that the court declared the act is remedial, and to be liberally construed, so as to suppress the mischief and advance the remedy. True, but the mischief was *preferences by assigning creditors* and hence preferences in assignments were forbidden, and the liberal construction was adopted to effectuate the legislative intent by preventing the assigning debtor from giving preferences by resorting to transfers in other forms, made at the same time with or in contemplation of the assignment itself. Hence the court said that when the debtor "reaches the point where he is ready and determines to yield the dominion of his property, *and makes an assignment for the benefit of his creditors,* under the statute, this act declares that the effect of such assignment shall be the surrender and conveyance of all his estate, not exempt by law, *to his assignee,* rendering void all preferences and bringing about the distribution of his whole estate equally among his *bona fide* creditors." And further speaking of the act, " no insolvent debtor, having in view the disposition of his estate, can be permitted to defeat its operation by effecting unequal distribution of his estate *by means of an assignment,*

and any other shift or artifice under the forms of law." I italicize words in the foregoing quotations, to emphasize the fact that the writer who so happily formulated and so clearly expressed the opinion of the court, had clearly in mind the distinction between an assignment and a transfer of some other form, and clearly recognized the difficulty of treat-ing a judgment or conveyance as an assignment or part of an assignment, and void, if preferential, when no assignment was ever executed or contemplated by the debtor who gave such preference.

The act regulates the conduct of assigning, not of insolvent debtors. We have no involuntary assignment law, and we know of no principle of law operative in this State that limits or controls an insolvent debtor in the distribution of his assets provided they are applied in discharge of *bona fide* debts. That the true meaning of this voluntary assignment act is the one here taken by us is further and clearly shown by the case of Schroeder v. Walsh, 120 Ill. 402, the opinion in which was written by the same judge who wrote in Preston v. Spauld-ing, and was filed on the same day as the opinion in said last mentioned case. There, an instruction was given which stated to the jury that "if a man finds himself in failing circum-stances, he has a right to prefer one creditor to another; to so dispose of his property that one of his creditors shall receive his pay in full, and another receive nothing; nor is there any presumption of fraud in so doing." This proposition was assigned as error, and in approving it the court said: "In the absence of any bankrupt law or statute to the contrary, the law is well settled, that a debtor in failing circumstances, not seeking the benefit of the general assignment law, may pre-fer one creditor to another equally meritorious, if done in good faith. * * * The statute relating to assignments by debtors for the benefit of the creditors prohibiting preferences in such assignments, has no application to a case of this kind. Notwithstanding that statute a debtor may pay one creditor in full either in money or by sale of his property. That act applies only to conveyances of property *to an assignee or trustee in trust*, to convert the same into money for the ben-

Farwell v. Nilsson.

efit of creditors of the assignor, which can now only be made under that law."

Counsel seeks to avoid the effect of this decision on the ground that the case was at law, and that the jurisdiction to administer the equity of creditors arising on acts done in fraud of the law rests in chancery. But titles made in fraud of the law are void at law as well as in equity. Besides, the act created no new head of equity jurisdiction and we are at a loss to know to what head of equity the administration of insolvent estates is to be assigned.

To give to this act the scope and effect here contended for would be to far exceed the legislative intent. It is held in Farwell v. Cohen, *supra*, that the act contemplates no such thing as a constructive assignment, and that before the County Court gets jurisdiction, an actual assignment must be made and recorded as required by the act. It must follow that before a court of equity has jurisdiction to prevent frauds upon the act, and treat transfers made upon the liens created as parts of the assignment, there must be the execution of an instrument in whatever form which creates a trust for the benefit of creditors.

For the court to take the administration of the insolvent's estate and enforce an equal distribution of it among his creditors, because he has himself distributed it, in payment to some and to the exclusion of others, where no trust or assignment for the benefit of creditors is made or intended by him, would be to carry the statute far beyond the line which limits the most liberal construction, and to enter on the domain, forbidden to this court, of judicial legislation.

The case of White v. Cotzhausen, 129 U. S. 329, is pressed upon our attention by counsel for appellants, as being a decision of the Supreme Court of the United States which fully sustains the construction of the law for which he contends. It must be admitted that the case cited does support appellants' view, and we shall not attempt to distinguish said case from the one here presented. Much as we respect the conclusions of that learned court, we are, upon questions involving the construction of statutes of our own State, bound

by the decisions of our Supreme Court. If our court had not, as we conceive it has, already made its construction of the voluntary assignment act plain, we should nevertheless find great difficulty, as will appear from what we have already said, in assenting to the view taken in White v. Cotzhausen. It would serve no useful purpose to discuss cases decided by courts of other States and cited by counsel in further support of this contention. They are nearly all made in view of peculiar statutes in the respective States where they were rendered, and do not serve to illustrate the law of this State.

The decree of the court in dismissing the bill was correct and will be affirmed.

*Judgment affirmed.*

GARY, P. J., dissenting. I think that White v. Cotzhausen is the logical sequence of Preston v. Spaulding and ought to be followed. I see no mode short of that there adopted to prevent a total disregard of the object and spirit of the voluntary assignment act.