HERMAN G. WEBER, for use, etc.

v.

ROBERT MICK et al.

*Filed at Mt. Vernon January 21, 1890.*

1. FRAUDULENT CONVEYANCE—*hindering and delaying creditors.* A chattel mortgage made to a creditor of the mortgagor for the purpose of hindering and delaying other creditors of the same debtor, will be regarded as fraudulent. To hinder and delay creditors in the collection of their claims, is to defraud them.

2. SAME—*how far a creditor may protect himself—as against other creditors.* A creditor may pursue his legal remedies against his debtor, if he does so in good faith, and retain thereby any priority he may obtain, either by suit or the voluntary act of the latter, even though it may defeat other creditors; but it is otherwise if he seeks priority for the express purpose of delaying or defeating other creditors.

3. PLEADING—*former adjudication as an estoppel.* In an action upon a replevin bond, the defendants pleaded that the judgment dismissing the replevin suit was not on the merits. The plaintiff replied that certain creditors of C. brought several actions against C. by attachment, which were levied on certain goods of C. which he had fraudulently mortgaged to M. & N.; that J., the sheriff, levied on the goods, and took the same from M. & N., and kept them until M. & N. replevied the same in the replevin suit; that M. & N., in the name of C., litigated their right to said property, claiming their mortgage was valid; that the title of the mortgagees to the property was afterward adjudged by the court to be fraudulent and void, whereby the title had been fully adjudicated since the execution of the replevin bond: *Held,* that to make the pleading good, it should have shown that the question of the validity of the mortgage and of the priority of the attaching creditors was before the court for adjudication, and was in fact decided, or might have been decided, and that the mortgagees were before the court so as to be bound as parties by the judgment, and that this must be shown by proper averments of fact, and not by mere conclusions of the pleader.

4. FORMER ADJUDICATION—*of what matters conclusive.* A judgment for the plaintiff in a suit by attachment, sued out on the ground of a fraudulent transfer of the defendant's property, if no issue is made upon the question of fraud, is conclusive only upon the questions of the existence and amount of the indebtedness. In such case, the judgment is no adjudication as to the title to the property attached.

5. If the grounds for the attachment are put in issue by plea in abatement, this will raise other issues,—as, for instance, the fact whether

the defendant, within the two years before the suit, fraudulently conveyed his property to hinder or delay his creditors.

6. Under the statute giving any person, other than the defendant in attachment, the right to interplead and claim the property attached, a judgment in favor of a mortgagee so interpleading will be conclusive of his rights under the mortgage, as against the attaching creditor. But third persons can not litigate, in the name of the defendant in attachment, their rights to the property attached.

7. Chattel mortgage—*whether acknowledgment must be shown— property in possession of mortgagee.* Where, at the time a chattel mortgage is executed, the property mortgaged is delivered to and retained by the mortgagee, it is unnecessary to show that the mortgage was acknowledged at all, in order to its admissibility in evidence.

8. Voluntary assignment—*the act limited to the subject of its title— as distinguished from ordinary securities.* The act relating to voluntary assignments being limited in its title, would, if it should attempt to deal with or regulate "involuntary assignments," or any subject other than that embraced in the title, be void, under section 13, article 4, of the constitution. It can not, by construction, apply to any other subject than to "voluntary assignments." It has nothing to do with chattel mortgages.

9. Same—*voluntary assignment defined—and distinguished from other forms of security.* A voluntary assignment is an instrument in writing executed by a failing debtor, by which he assigns or transfers to some third person, as assignee or trustee, the whole, or sometimes the bulk, of his property, to be by such trustee distributed among the assignor's creditors in satisfaction of their demands. It differs materially from a mere sale in payment of a debt, and also from a pledge or hypothecation of property in the nature of a mortgage.

10. A fundamental distinction between a mortgage and an assignment for the benefit of creditors is, that a mortgage is a mere security for a debt, the equity of redemption remaining in the mortgagor, while an assignment is more than a security for a debt, and is an absolute appropriation of the property to its payment. It does not create a lien in the creditors, but passes both the legal and equitable title to the property absolutely, beyond the control of the assignor. It leaves no equity of redemption, as in the case of a mortgage.

11. Judicial notice—*as to justices of the peace of other counties.* The circuit court of one county will not take judicial notice of the official character of the justices of the peace of other counties.

12. Practice—*specific objection.* A general objection to a chattel mortgage as evidence, without specifying any particular ground, will not reach an objection that, presumably, might have been obviated if specifically pointed out. When a particular objection may be obviated if made, and is not made, it will be deemed to have been waived.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Saline county; the Hon. ROBERT W. McCARTNEY, Judge, presiding.

Mr. F. M. YOUNGBLOOD, Mr. W. S. CANTRELL, and Mr. W. J. N. MOYERS, for the appellant.

Messrs. PARISH & PARISH, and Messrs. MORRIS & SON, for the appellees.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was an action of debt, brought by Herman G. Weber, successor in office to John R. Tanner, United States Marshal for the Southern District of Illinois, upon a replevin bond executed to said Tanner as such marshal, in a certain replevin suit brought by the firms of Mackey, Nisbet & Co. and Hinckle, Nisbet & Co., in the Circuit Court of the United States for the Southern District of Illinois, against William R. Jones, sheriff of Franklin county, to recover possession of a stock of goods and merchandize formerly owned by one Thomas J. Crawford. The defendants appeared and pleaded *non est factum,* and also a plea to all the plaintiff's damages except nominal damages, averring that said goods and merchandize were the property of the plaintiffs in said suit, and that the merits of the case had not been determined in the trial thereof, said replevin suit having been dismissed by the court in which it was brought for want of jurisdiction. Issue was duly joined on the first plea, and to the second plea the plaintiff filed two replications.

By his first replication he denied that the property in said goods and merchandize was in the plaintiffs in the replevin suit, and averred that it was in said Jones as sheriff of Franklin county, by virtue of nine attachment writs against the property of said Crawford, issued to him as such sheriff, by the Circuit Court of Franklin county, and by him duly levied on

said goods and chattels. Upon this replication issues of fact were taken.

The second replication alleges the commencement in said Circuit Court of Franklin county, by creditors of said Crawford, of said nine attachment suits, and the levy of the attachment writs therein by said sheriff upon said stock of goods and merchandize prior to the commencement of said replevin suit; that the affidavits upon which said attachments were issued charged said Crawford with having, within two years, fraudulently conveyed the property in question so as to hinder and delay his creditors, such conveyance having been made by means of two certain chattel mortgages executed by him to the firms of Mackey, Nisbet & Co. and Hinckle, Nisbet & Co., mortgaging said property to them; that the only title those firms had to said property was by virtue of said mortgages; that said mortgages were executed with intent on the part of both Crawford and said firms to hinder and delay the creditors of said Crawford; that said Jones, being sheriff as aforesaid, seized the property covered by said chattel mortgages by virtue of said attachment writs and took it out of the possession of said firms and retained possession thereof until it was replevied by said Tanner and delivered to said mortgagees; that after the execution of the replevin writ, to-wit, at the April term, 1885, of the Circuit Court of Franklin county, said attachment suits came on to be heard, and that said mortgagees appeared by counsel, and in the name of said Crawford, litigated their right to said property, the question litigated and the defense made being as to the validity of said mortgages, and the rights of the mortgagees thereunder, and that the title of said mortgagees to said property by virtue of said chattel mortgages was by said court fully adjudicated and determined in favor of said mortgagees; that said attachment creditors appealed to the Appellate Court of the Fourth District, and that said mortgagees appeared in that court by their counsel and litigated their title to the mortgaged property; that

said judgment was by said Appellate Court reversed and the cause remanded to the Circuit Court for further proceedings; that said attachment suits were again placed on the docket of said Circuit Court for trial, and thereupon said mortgagees appeared in said court by counsel and filed their motion to be made defendants and for leave to interplead, and that said motion was allowed, and they thereby became parties defendant, and had leave to file their respective interpleas, but that they made default, whereupon final judgment was rendered by said court awarding special execution in each of said attachment suits for the sale of the goods and chattels attached, and claimed by said mortgagees; that afterwards such proceedings were had in said Circuit Court as resulted in said court holding that said chattel mortgages were fraudulent and void as against said attachment creditors; whereupon the plaintiff avers that the title of said mortgagees to said goods and chattels has been fully adjudicated by said Circuit Court of Franklin county since the execution of said replevin bond. To said second replication the defendant interposed a demurrer, which was sustained.

At the trial of the issues of fact formed by said pleadings, the jury found said issues for the plaintiff and found his debt to be $8000, the penalty of the replevin bond, and assessed his damages at $260, and the court, after denying the plaintiff's motion for a new trial, gave judgment in favor of the plaintiff for his debt and damages as found by the jury, and also for his costs, it being ordered by said judgment that said debt should be satisfied upon the payment of said damages. The present appeal is from a judgment of the Appellate Court affirming said judgment of the Circuit Court.

It appears from the evidence given at the trial that, on the 5th day of February, 1885, and for several years prior thereto, Thomas J. Crawford was carrying on the business of a retail merchant at Frankfort in the county of Franklin, and that at the date last mentioned he was the owner of a stock of

goods, wares and merchandize, consisting of dry goods, groceries, hardware, plows, sewing machines and general merchandize, the value of which is variously estimated by the witnesses at from $8000 to $16,000. His indebtedness at that time seems to have aggregated nearly or quite $10,000, and he was in greatly embarrassed circumstances, and was not able to meet his indebtedness as it matured. Of this indebtedness about $4200 was owing to the firms of Mackey, Nisbet & Co. and Hinckle, Nisbet & Co., and on said 5th day of February, 1885, Crawford being pressed for security by the agents of those firms, was prevailed upon to execute to said firms chattel mortgages for the amount of their indebtedness, mortgaging to them the whole of said stock of goods, and, upon executing said mortgages, to surrender possession of said stock of goods to the mortgagees. The day after the execution of said mortgages, an execution against Crawford and in favor of one Lowenthal for nearly $800 was levied upon a portion of said goods, and was afterwards satisfied by a sale of the goods thus levied upon. Subsequently, and on different days during the latter part of February and the early part of March, 1885, nine writs of attachment were issued by the Circuit Court of Franklin county against the property of said Crawford at the suit of that number of his creditors, and by virtue of said writs of attachment, Jones, the sheriff of Franklin county, seized said stock of goods in the hands of said mortgagees and levied said attachments thereon. On the 12th day of March, 1885, said mortgagees brought the replevin suit in which the replevin bond in question was given, and in that suit the United States Marshal replevied said goods from the sheriff and redelivered them to the mortgagors. Subsequently the Circuit Court of the United States dismissed said replevin suit for want of jurisdiction, and awarded a writ of *retorno habendo* to the defendant in said suit for said goods. None of said goods have been returned to said Jones, and this suit is brought to recover their value.

All questions of fact involved in the controversy are of course foreclosed by the judgment of the Appellate Court. For this reason the question whether the execution of said mortgages was not, as to the general creditors of Crawford, a fraud in fact, can not be properly addressed to this court. It is true, evidence was introduced by the plaintiff tending to charge both Crawford and the two firms to which said mortgages were given with fraud of this character. Said evidence tended to show that the property covered by said mortgages was, in value, largely in excess of the amount of the indebtedness thereby secured, and that said mortgages were executed with an express intent on the part of both mortgagor and mortgagees to place all the debtor's property, at least for the time being, beyond the reach of his other creditors, and to thus hinder and delay them in the collection of their debts. Such intention, if 'it in fact existed, was clearly fraudulent. A creditor has unquestionably the right to pursue his legal remedies against his debtor, so long as he does so in good faith, and if he thus succeeds in obtaining priority, either by suit or by the voluntary act of his debtor, he is entitled to hold the advantage gained, even though the result may be to postpone or even defeat other creditors. But the rule is otherwise where he seeks a priority for the express purpose of delaying or defeating other creditors and not for the sole purpose of collecting or securing an honest debt. Now in this case, whether the mortgages were obtained with a fraudulent intent on the part of the mortgagees is a pure question of fact, and that question having been resolved by the verdict of the jury and the judgment of the Circuit and Appellate courts adversely to the plaintiff, it is conclusively settled against him, and is not open for consideration here.

It is insisted that the Circuit Court erred in sustaining the demurrer to the plaintiff's second replication to the defendants' second plea. That replication attempts to set up, by way of estoppel, an adjudication by the Circuit Court of Frank-

lin county, had in the attachment suits, that the mortgages in question were fraudulent and void, and, consequently, that the property in the stock of goods in question, at the commencement of the replevin suit, was in the sheriff of Franklin county, who claimed to hold said goods under and by virtue of the writs of attachment. To give said adjudication the force here claimed for it, the pleading must show by proper averments, first, that the question of the validity of said chattel mortgages and of the priority of the attaching creditors was before the court for adjudication, and was in fact decided, or might have been decided, and, second, that the mortgagees were before the court in such way as to make them parties to the judgment, so as to be bound thereby. And this must be shown by proper averments of facts of which it is the legal result or conclusion, and not by averments of mere legal conclusions drawn by the pleader.

The proceedings in which said adjudication is alleged to have been had were several attachment suits brought against Crawford by several of his creditors for the collection of their debts. In such suits, unless proper pleadings were interposed raising other questions, the only questions before the court were as to the existence and amount of the indebtedness sued for, and judgments in favor of the plaintiffs with an award of special executions for the sale of the property attached, were conclusive of those questions only. They were adjudications as between plaintiffs and defendant of the fact and amount of the debts recovered, but were in no sense adjudications as to the title to the property seized under the attachment writs. The award of special executions merely authorized the sale of whatever interest the defendant might have in said property, be it greater or less, sold, and to have the money thus made applied in satisfaction of the plaintiffs' judgments.

As we have said, other questions may in such cases be raised by proper pleadings. Thus, the defendant may, by a proper plea traversing the statements of the attachment affidavit,

raise an issue as to the existence of proper grounds for issuing the writ. If such plea had been filed in the attachment cases in question issues would have been presented as to whether the defendant had, within two years next prior to the commencement of said suits, fraudulently conveyed the property in question so as to hinder and delay his creditors, and under such issues the validity of said chattel mortgages, at least as a collateral question, would have been presented for decision.

The statute also permits any person, other than the defendant, who claims the property attached, to interplead, and thus submit the validity of his claim to the court for decision. Doubtless if the mortgagees in this case had in fact interpleaded, and the decision had been against them, such decision would have been conclusive of their rights, and would have been a bar to any further assertion of title as against the attachment creditors.

But the replication demurred to wholly fails to show, by any proper averments, the submission to the court of any issue in relation to the validity of the mortgages, or any decision which can be held, either directly or inferentially, to embrace that question. The replication sets up two judgments in the Circuit Court, one apparently in favor of the defendant in the attachment suit, which was taken to the Appellate Court and there reversed, and the other rendered in favor of the plaintiffs in the attachment suits after said suits had been reinstated in the Circuit Court. The averments as to neither of these judgments, in our opinion, make a proper showing of any adjudication as to the validity of said chattel mortgages, and certainly none which can now be set up by way of estoppel against an assertion by the mortgagees of title to the mortgaged property.

As to the first judgment, it is alleged, it is true, that the mortgagees appeared, and, in the name of Crawford, litigated their right to the mortgaged property, and that the question litigated and defense made was as to the validity of the chattel

mortgages and the rights of the mortgagees thereunder. The decision was in their favor, and of course was not an adjudication that the mortgages were fraudulent and void. But even if the decision had been the other way, we are unable to see how, under the facts averred, the case would have been at all different. Whatever litigation there was, was in the name of Crawford, the defendant, and manifestly no questions could be litigated in his name by others which he would have been unable to litigate himself. We are aware of no way in which the defendant in an attachment suit can litigate with the attachment creditor the title of a stranger to the property attached. The twenty-ninth section of the Attachment Act which permits claimants of property attached to interplead and litigate their claims, expressly excludes the defendant himself from so doing. The replication therefore, in alleging that the mortgagees appeared in the attachment suits and litigated their right under the mortgages in the name of Crawford, alleges a legal absurdity. Their rights could not possibly be litigated in that way.

Nor are the allegations of the replication in relation to the second or final judgment in the attachment suits any more fortunate. It is merely shown that the mortgagees appeared and asked and obtained leave to interplead, but went no further. No interplea was filed, and therefore the issue which might have been raised by such plea was never presented, and so could not have been passed upon by the court. Under these circumstances no adjudication affecting the question of the mortgagees' title was or could have been made.

Complaint is made of the decision of the Circuit Court overruling the plaintiff's objection to the admission of said chattel mortgages in evidence. The record shows that a general objection was made to said mortgages without specifying any ground of objection, and that such objection was overruled. Counsel now insist that the real ground of objection was, that no proof was made of the official character of the justice of

34.—131 ILL.

the peace before whom said mortgages purport to have been acknowledged. It is true the trial of this case was had in Saline county, while the mortgages were executed and acknowledged in Franklin county, and it is also the rule that the Circuit Court of one county will not take judicial knowledge of the official character of the justices of the peace of other counties. But there are two sufficient answers to the objection. 1. It was not specifically pointed out, and being one which might presumably have been obviated, it will be deemed to have been waived. 2. As the possession of the property mortgaged was delivered to the mortgagees at the time the mortgage was executed and remained with them, it was unnecessary to show that the mortgage was acknowledged at all. The first section of the statute in relation to chattel mortgages provides, that no mortgage of personal property shall be valid as against the rights and interests of third persons, "unless the possession shall be delivered to and remain with the grantee, *or* the instrument shall provide for the possession of the property to remain with the grantor, and the instrument is acknowledged and recorded as hereinafter directed."

Five of the instructions to the jury asked on behalf of the plaintiff were refused, and their refusal is assigned for error. The first refused instruction lays down the rule that where a party claims rights under a chattel mortgage in a county other than the one in which it was executed, he must have attached to it a proper certificate of the official character of the justice of the peace before whom it was acknowledged, and that if in this case, the evidence showed that the chattel mortgages in question were executed in Franklin county, and there was no certificate of the county clerk of said county that the person before whom they were acknowledged was, at the time said acknowledgment was taken, a justice of the peace of that county, said instruments could not be regarded as chattel mortgages in this case. Nothing need be added to what has

already been said by way of showing the impropriety of said instruction.

The second refused instruction was to the effect that, before the mortgagees could claim title by virtue of said chattel mortgages, it devolved upon them to show that said mortgages were executed in good faith, and had been acknowledged in strict accordance with the statute. As the possession of the mortgaged property was given to and remained with the mortgagees, this instruction, like the foregoing, was inapplicable, and was therefore properly refused. The fifth instruction refused was of substantially the same purport as the second.

The third instruction refused was, in substance, that under the law of this State, the plaintiff, in order to recover, need not show that said chattel mortgages were made to defraud creditors, but that it was sufficient to show that they were made to hinder and delay the other creditors of the mortgagor. The terms of this instruction are contradictory. Hindering and delaying creditors in the collection of their debts is defrauding them, within the meaning of the fourth section of our present Statute of Frauds. That section provides that every gift, grant, conveyance, assignment or transfer of any estate, real or personal, "made with the intent to disturb, delay, hinder or defraud creditors or other persons," shall be void. The instruction proceeds upon the theory that disturbing, hindering and delaying creditors are acts different and distinguishable from defrauding them, and that the statute, by using the words "disturb, hinder, delay or defraud" creditors, points out four separate and distinguishable courses of action, either one of which will render the conveyance affected by it void. This we think is a mistake. To disturb, to hinder, or to delay a creditor in the collection of his debts are only different modes of defrauding him of his rights, and those words are used merely as more specific statements of various forms of fraud, the words "to defraud" being the more generic term which includes them all. Proof that the chattel mort-

gages in question were given to hinder and delay the mortgagor's creditors would necessarily be proof that said mortgages were given to defraud creditors, and the proposition of the instruction that there need be no proof of fraud is directly repugnant to that part of it which requires proof of an intention to hinder and delay creditors.

The fourth instruction refused is, in substance, that by the laws of this State, a failing debtor can not now prefer one creditor to another by turning over to such creditor his entire property under a chattel mortgage, when the property so mortgaged is greatly in excess of the debt secured by such mortgage. This instruction was doubtless drafted upon the theory that giving a preference to a creditor by means of a chattel mortgage, when the mortgage covers the debtor's entire property, contravenes the provisions of the thirteenth section of the statute in relation to voluntary assignments for the benefit of creditors. To this view we are unable to assent.

Said act was passed in 1877 under the following title: "An Act concerning voluntary assignments, and conferring jurisdiction therein on County Courts." The subject matter of the act was thus limited to "voluntary assignments," and even if it had contained express provisions attempting to deal with or regulate "involuntary assignments," or any subject other than the one embraced in the title, such provisions would have been void under section 13, article 4, of the Constitution. For the same reason, it must be held, that every attempt to apply the act or any of its provisions, by construction, to any subject other than "voluntary assignments" must be wholly unavailing.

But the only subject with which the act attempts to deal is, "voluntary assignments for the benefit of creditors," and to determine the scope of the act, we have only to ascertain what transfers of property are properly embraced within the legal definition of that class of assignments. At the time said act was passed, and for many years before, voluntary assignments for the benefit of creditors constituted a class of conveyances

or transfers of property well known in this and other States, and were as precisely and definitely known by that name as were any of the other classes of instruments by which property may be conveyed or transferred, such as deeds of conveyance of real property or chattel mortgages. Such assignments have always been understood to be instruments voluntarily executed by a failing debtor by which he assigns to some third person, as assignee or trustee, the whole, or sometimes the bulk, of his property, to be by such trustee distributed among the assignor's creditors in satisfaction of their demands. In *Dias* v. *Bouchaud,* 10 Paige, 445, Mr. Chancellor Walworth, in defining the words "voluntary assignment" as used in an act of Congress regulating the collection of duties upon imports and tonnage, says that those words "unquestionably mean, an assignment of all the debtor's property in trust for the payment of his debts, as contradistinguished from a mere sale thereof to a creditor in payment of his debt, or the pledge or hypothecation of the property to a particular creditor, as a mere security, in the nature of a mortgage." Mr. Burrill, in his Treatise on Assignments, says: "Voluntary assignments for the benefit of creditors are transfers, without compulsion of law, by debtors, of some or all of their property, to an assignee or assignees, in trust to apply the same, or the proceeds thereof, to the payment of some or all of their debts, and to return the surplus, if any, to the debtor." Burrill on Assignments, sec. 2. The same learned author, after remarking that: "Such assignments are termed voluntary, to distinguish them from such as are made by compulsion of law, as under statutes of bankruptcy and insolvency;" and also that: "Voluntary assignments for the benefit of creditors are in many respects peculiar to American law and practice, and have in this country acquired a technical signification;" he proceeds: "A voluntary assignment for the benefit of creditors implies a trust, and contemplates the intervention of a trustee. Assignments directly to creditors, and not upon trust, are not voluntary

assignments for the benefit of creditors. . Assignments may be made either to the whole body of the creditors or to particular creditors, or they may be of all or a part of the debtor's property; but unless a trust is thereby created by the assignor in favor of creditors, such conveyances are not within the class of instruments known as assignments for creditors." Ibid. secs. 2, 3.

In *United States* v. *McLellan,* 3 Sumner, 345, it was held by Mr. Justice Story that, a conveyance by a debtor known to be insolvent, of all his property, to one or more of his creditors, in discharge of their debts and liabilities, not exceeding the amount due and payable to them, and not for the benefit of the creditors at large, or of any other creditors than the immediate grantees, was not a voluntary assignment, within the meaning of the act of Congress giving to the United States a priority in cases of voluntary assignments for the benefit of creditors.

A fundamental distinction between a mortgage and an assignment is, that a mortgage is a mere security for a debt, the equity of redemption remaining in the mortgagor, while an assignment is more than a security for a debt, and is an absolute appropriation of the property to its payment. It does not create a lien in favor of creditors upon property which in equity is still regarded as the assignor's, but it passes both the legal and equitable title to the property absolutely beyond the control of the assignor. In cases of assignments therefore there remains no equity of redemption in the assignor. Burrill on Assignments, sec. 6. Thus, in New Hampshire it has been held, that a mortgage or pledge by a debtor of all his property to secure a portion of his debts, leaving others unprovided for, was not an assignment within the meaning of the statute providing for an equal distribution of property assigned for the benefit of creditors. *Low* v. *Wyman,* 8 N. H. 536; *Baker* v. *Hall,* 13 id. 298; *Danforth* v. *Denny,* 25 id. 155. So in Vermont, it has been held that the statute prohibiting

general assignments should be construed so as to embrace only those transfers of property which are made in trust for creditors, and that a transfer by a debtor of all his property is not a general assignment, unless the transfer is to a trustee in trust for other creditors; and, consequently, if a debtor conveys his property directly to creditors for their benefit, and no trust is created for others, the transfer is to be regarded as a mortgage or pledge and not as an assignment. *Peck* v. *Merrill,* 26 Vt. 686; *McGregor* v. *Chase,* 37 id. 225. In *Durham* v. *Whitehead,* 21 N. Y. 131, it is held that an assignment by an insolvent debtor of all his personal property, made directly to a creditor, reserving the surplus, if any, to the assignor, is, in effect, a chattel mortgage. See also, *Gage* v. *Chesebro,* 49 Wis. 186; *Briggs* v. *Davis,* 21 N. Y. 574; *McClelland* v. *Remsen,* 3 Abbott's Decis. 74; *Van Buskirk* v. *Warren,* 4 id. 457.

 The principles above laid down are entirely in harmony with the construction placed upon our Voluntary Assignment Law in *Schroeder* v. *Walsh,* 120 Ill. 403. In that case certain insolvent debtors had transferred their property directly to particular creditors, and in holding that said transaction was not an illegal preference within the meaning of said statute, we said: "The statute relating to assignments by debtors for the benefit of their creditors, and prohibiting preferences in such assignments, has no application to a case of this kind. Notwithstanding the statute, a debtor may pay one creditor in full, either in money or by the sale of his property. That act applies only to conveyances of property to an assignee or trustee, in trust, to convert the same into money for the benefit of creditors of the assignor, which can now be made only under that law."

In this case the instruments by which the goods and chattels in question were transferred to said mortgagees were in the ordinary form of chattel mortgages, and each purported to be given to secure a promissory note executed by the mortgagor, to the mortgagees, due one day after date, and it was

recited in said mortgages that the possession of the mortgaged property was given to the mortgagees, and they were empowered to dispose of the same at public or private sale, and in bulk or at retail, and it was provided that upon payment of said notes, and all costs and charges, said instruments should become null and void. It is clear, upon the principles established by the authorities above cited that they were mere chattel mortgages executed for the sole benefit of the mortgagees, and creating no trust in favor of any of the creditors of the mortgagor. It is clear then that they did not constitute voluntary assignments for the benefit of creditors, within the meaning of the statute. The fourth instruction refused was therefore wholly inapplicable, and was properly refused.

The law was laid down in the defendants' instructions with substantial accuracy, at least no objections thereto are presented by counsel for the plaintiff which seem to be tenable, and consequently there is no occasion for giving those instructions special consideration.

It is insisted that the judgment should be reversed because it awards the plaintiff more than nominal damages, the contention being that the damages should be either nominal or for the full value of the goods and chattels replevied, up to the amount of the claims of the attachment creditors. After considering the entire record, we find no ground upon which we can hold that the damages should have been sufficient to make full compensation for the goods and chattels replevied. The fact that the jury gave the plaintiff more than nominal damages is a matter of which he certainly can not complain.

As the record is presented here, there is no error for which, in our opinion, the judgment should be reversed. It will therefore be affirmed.

*Judgment affirmed.*