## The First National Bank of Chicago
### v.
## North Wisconsin Lumber Company.

*Insolvency—Assignment—Act of May 22, 1877—County Court—Jurisdiction of—Trust.*

1. A transfer of property and choses in action by an insolvent to his creditor direct, for the purpose of securing or providing the means of payment of that creditor, and of that creditor only, is not a voluntary assignment for the benefit of creditors, under the act of May 22, 1877.

2. All charges of fraud and collusion are foreign to the jurisdiction of the County Court. It has no general equity powers.

3. It matters not what a given transaction between an insolvent and a party named may be, if it is not what the statute provides for as a voluntary assignment for the benefit of creditors. If creditors wish to attack it, they must go elsewhere than to the County Court, unless, if they choose to risk an attachment of the property transferred, or proceed by garnishment, they may resort to that court in the exercise of its ordinary jurisdiction at law, for amounts not exceeding $1 000.

[Opinion filed November 2, 1891.]

Appeal from the County Court of Cook County; the Hon. George W. Brown, Judge, presiding.

Messrs. Orville Peckham, Ashcraft & Gordon and W. H. Swift, for appellant.

Messrs. Hopkins, Aldrich & Thatcher and E. H. Gary, for appellee.

Gary, J. We take the statement of this case from the brief of the appellee. "This is an appeal from an order of the County Court of Cook County, on the petition of appellee, a creditor of Spooner R. Howell, finding that he had made a voluntary assignment of his property and assets as charged in said petition, and ordering appellant to comply with the provisions of the statute." * * *

384   APPELLATE COURTS OF ILLINOIS.

VOL. 41.]   First Nat. Bk. of Chicago v. North Wis. Lumber Co.

The petition charges that appellee is a corporation existing under and by virtue of the laws of the State of Wisconsin, engaged in the manufacture and sale of lumber; that Spooner R. Howell, a resident of the county of Cook, State of Illinois, was on the 14th day of July, 1891, and had been for some years prior thereto, engaged in the lumber business in Chicago, Omaha, Nebraska, Atchison, Kansas, and other places in the west and northwest; that on said 14th day of July, 1891, he was indebted to appellee in the sum of $50,964.08 for lumber and other materials, goods and chattels, sold and delivered; that on said date he had property and material in the conduct and carrying on of his business in the city of Chicago, of the value of $600,000, and books and accounts at said place at said time of the value of $100,000; and that at various places mentioned and described in said petition he had property, goods and chattels, which, with the amount above given as being in the city, of Chicago, aggregated the sum of $1,500,000; that he was indebted at said date to appellant in the sum of $200,000; and that he was indebted to various creditors, including appellant, at said time, in the sum of $1,750,000.

The petition charges that on the 30th day of April, 1891, the said Howell was in fact insolvent, and that the First National Bank of Chicago at said time, and for a long time prior thereto was apprised of the insolvent condition of the said Howell. It further charges that on the said 30th day of April, 1891, a conference was had between Howell, his attorney, and Lyman J. Gage, the president of appellant, and other officers of said bank, the object and purpose of which was to devise some plan or scheme whereby two things could be accomplished: First, whereby Howell could transfer and assign all his property; and secondly, whereby he could make said First National Bank of Chicago a preferred creditor; and that in pursuance of such scheme and design, and in fraud of the rights of the other creditors of the said Howell, the following instrument was drawn up and signed:

"Know all men by these presents that I, Spooner R. Howell, of Chicago, Illinois, do hereby sell, assign and transfer

unto the First National Bank of said city, all my stock of lumber of every name and nature, situated upon the premises hereinafter described, and upon the streets and alleys adjoining the same or any part thereof; also the planing mill, dry kilns, barns and sheds situated upon said premises, and all the machinery and tools therein and connected therewith; also all other personal property, goods and chattels which shall hereafter be placed upon said premises or any part thereof, and shall be thereon at the time when said First National Bank shall take possession under and by virtue of this bill of·sale.

"And I do also sell, assign and transfer to said First National Bank all my horses, mules, wagons, harness, office furniture and fixtures, and all other personal property, goods and chattels belonging to me and used in connection with the business now being carried on by me upon said premises under the name and style of S. R. Howell & Co.

"And said First National Bank is to have and to hold all the aforesaid personal property, goods and chattels, as security for any and all indebtedness of S. R. Howell, S. R. Howell & Co., and Howell, Jewett & Co. to said First National Bank, as maker, indorser or guarantor of any and all promissory notes, and as acceptor, guarantor or indorser of any and all drafts, whether any of said notes or drafts shall have matured or not; also as security for any indebtedness of S. R. Howell, S. R. Howell & Co., and Howell, Jewett & Co., to said First National Bank by way of overdraft, and any and all other indebtedness of every name and nature of said S. R. Howell, S. R. Howell & Co., and Howell, Jewett & Co., whether direct or indirect, and whether due or not; also as security for any indebtedness of S. R. Howell, S. R. Howell & Co., and Howell, Jewett & Co., to said First National Bank as maker, indorser, guarantor or acceptor of any negotiable paper which may be hereafter held and owned by said First National Bank; also as security for the payment of any and all negotiable paper now held and owned, or which may hereafter be held and owned by said First National Bank, upon which I am now or may hereafter become liable in my own name or in any other name or names, alone or with others, as maker

386    APPELLATE COURTS OF ILLINOIS.

VOL. 41.]    First Nat. Bk. of Chicago v. North Wis. Lumber Co.

acceptor, indorser, guarantor or otherwise, and also as security for any money which may hereafter be advanced to me or to any one for my use, or upon my request.

"And said First National Bank is hereby authorized to take possession at once, or at any time at its option, of any and all the aforesaid personal property, goods and chattels, and to have and to hold the same as security as aforesaid until any and all indebtedness now existing, or which may hereafter exist in manner and form as aforesaid, shall be fully paid. And in case said First National Bank shall take possession of said personal property, goods and chattels, or any part thereof, full power is hereby given to said bank to sell the same or any part thereof at public sale after giving at least thirty days' written notice to me, or in case of my death, to my personal representatives.

"The premises hereinbefore mentioned are described as follows, namely: Lot 1 in block 2 in the subdivision for partition of lots 31 and 32 in the assessors' division of part of the northwest one-fourth and the west one-half of the northeast one-fourth of section 32,— 39 north, range 14, east of the third principal meridian, Chicago, Illinois, being a dock lot fronting upon the south fork of the south branch of the Chicago river in said city of Chicago.

"Also that certain tract of land described as follows:

"Commencing at the northwesterly corner of 31st street and Benson street; thence westerly along the south line of said 31st street, 348 feet to a point; thence northerly thirty-three feet to a point; thence westerly to a point on the easterly bank of the south branch of the south branch of the Chicago river; thence in a southeasterly direction along the easterly bank of said river to the northerly line of the property of the Armour Glue Works; thence in an easterly direction along said line to a point on the west side of said Benson street, and thence in a northerly direction to the place of beginning.

"Also, lot 3 in block 2 in the subdivision for partition of lots 31 and 32 in the assessors' division of part of the northwest one-fourth and the west one-half of the northeast one-fourth of section 32,— 39 north, range 14, in the city of Chicago, as aforesaid.

"Also, blocks 10 and 11, together with all of Loomis street, and the east one-half of Jasper street, as platted in the subdivision for partition of lots 31 and 32 of the northwest one-fourth and the west one-half of the northeast one-fourth of section 32,— 39, range 14, in said city of Chicago.

"In witness whereof, I have hereunto set my hand this thirtieth day of April, A. D. 1891.

"S. R. HOWELL."

That it was not delivered to the bank, but was kept and held by agreement between Howell and the First National Bank of Chicago, by the attorney for Howell, with the express understanding and agreement that he should continue in business; and that whenever said Howell should determine that he could not longer continue in business, that he would complete such transfer and assignment, and would prefer the bank's indebtedness over his other creditors, by causing his attorney to deliver said instrument in writing to said bank, and would execute such other papers as his attorney and the attorney for the bank might deem necessary to secure said preference over the other creditors of Howell; that he would thereupon yield up voluntary dominion of all his property and assets to said bank under said instruments in writing.

It further charges that Howell did, after said 30th day of April, 1891, continue in business, and that appellee supposing he was solvent and able to pay, gave him credit to the amount already above indicated.

It also charges that for several days prior to the said 14th day of July, 1891, a number of conferences were had between Howell, his attorney, and Lyman J. Gage, the president of the First National Bank of Chicago, and the attorney for said bank, respecting the manner in which Howell should prefer the bank's indebtedness over his other creditors, and that during all said conferences Howell acknowledged that he could no longer continue in business, and that he was hopelessly insolvent, and voluntarily informed the bank of such fact, and that he would execute any and all instruments necessary to yield up dominion and control of all his property to secure said preference to the bank, and would yield up to said bank full

388 APPELLATE COURTS OF ILLINOIS.

VOL. 41.] First Nat. Bk. of Chicago v. North Wis. Lumber Co..

and complete dominion of his property and effects under said instruments.

Said petition further charges that in pursuance of the policy and scheme inaugurated by Howell and appellant, and in part carried out by them on the 30th day of April, 1891, Howell delivered to the bank on the 14th day of July, 1891, not only the instrument already set out, but the following instrument, which was duly signed by him:

"Know all men that I, Spooner R. Howell, of Chicago, in the county of Cook and State of Illinois, for and in consideration of one dollar to me paid by the First National Bank of Chicago, receipt whereof is acknowledged, and of all and every my indebtedness to said bank now and at any time hereafter existing, whether direct or contingent, due or to become due, owing severally by me or jointly with others, and to secure the prompt payment of such indebtedness as the same respectively becomes due, have pledged, assigned, transferred and set over, and by these presents do pledge, assign, transfer and set over unto the said First National Bank of Chicago, its successors and assigns, all and singular the indebtedness or moneys due or to become due to me (in my firm name of S. R. Howell & Company or otherwise), in open account, from any and all persons or corporations whatsoever; and for the consideration aforesaid I do further nominate, constitute and appoint the said, the First National Bank of Chicago, my true and lawful attorney, irrevocable for me and in my name, place and stead, or in my said firm name of S. R. Howell & Company, or in said attorney's own name, to demand, receive, collect, sue for and give acquittance for, and to compromise and settle on such terms and conditions as it may see fit, all and any such indebtedness or moneys, with full power of subtitution and revocation, hereby ratifying and confirming all that my said attorney, or any substitute by it appointed, may or shall lawfully do by virtue hereof.

" And further, for the considerations aforesaid, and to effectuate the foregoing pledge and assignment and power of attorney, I do hereby assign and set over, transfer and deliver unto said, The First National Bank of Chicago, its successors and

assigns, all books of account belonging to me and used in and about my business, done under the firm name of S. R. Howell & Company, whether books of original entry or otherwise, recording, stating or evidencing the indebtedness, or any part thereof aforesaid, wherever said books of account may be.

"In witness whereof I have hereunto set my hand this 14th day of July, A. D. 1891.

"SPOONER R. HOWELL."

And also executed similar instruments covering his property at Omaha, Nebraska, at Atchison, Kansas, and at other places in Kansas and Nebraska and other western States.

The petition charges also that in accordance with said plan and scheme previously made, appellant immediately took possession of all the property and assets of Howell mentioned in said above described instruments in writing, and by virtue of other instruments mentioned in said petition at other places, took possession of all Howell's property and assets at those places; and that by virtue of said instruments, and the scheme aforesaid, appellant took possession of all the property and assets of the said Howell; and that the said Howell now has no property or assets of any kind or character not in the possession or under the control of appellant, by virtue of the above described instruments, and instruments of a similar character covering property not in the State of Illinois.

The petition further charges that these instruments in writing were not made and executed by Howell as security for the payment of his indebtedness to appellant, but to liquidate said indebtedness with said bank, and that whatever surplus was left after the liquidation of said bank's indebtedness was, by agreement between said bank, through its president and Howell, to be turned over and delivered to said Howell. It further charges that the instruments in writing above specified were not chattel mortgages, and did not contain any condition of defeasance whatever, but that they were in law and in fact an assignment by said Howell for the benefit of his creditors, to the said First National Bank of Chicago, as assignee, with a preference in said assignment in favor of the said First National Bank of Chicago; and that by reason

390     APPELLATE COURTS OF ILLINOIS.

VOL. 41.]     First Nat. Bk. of Chicago v. North Wis. Lumber Co.

of the same and the taking possession of the property by the bank, it became and is subject to all the obligations of an assignee in cases of voluntary assignments.

After various charges in the petition showing neglect and refusal of appellant to comply with the voluntary assignment law in not filing an inventory in the County Court and not performing the other duties imposed upon it as assignee, the petition charges that the thirty days' notice mentioned in the first instrument above set forth has been by agreement between Howell and the bank waived, and that the bank has sold and disposed of a large quantity of lumber and other goods and chattels of said insolvent estate.

The petition further charges that appellant and Howell are in collusion to cheat and defraud the other creditors of the said Howell, and that the bank is by said deed of assignment made a preferred creditor of Howell, and then charges that all its acts since it seized said property and assets of said Howell, and took possession of the same, have been solely in the interest and under the direction of the said insolvent Howell and the maintaining of its preference as creditor.

To that petition the bank demurred; the court overruled the demurrer; decided that Howell had made a voluntary assignment; required the bank as assignee to file an inventory and give bonds as required by law, and upon the refusal of the bank to do so, removed the bank as assignee and appointed another assignee, and ordered the bank to deliver to him the assets which had come to the possession of the bank " by virtue of the assignment set forth in the petition."

From that action of the court this appeal is prosecuted. The County Court proceeded, and the appellee endeavors to sustain its action, under the act concerning voluntary assignments of May 22, 1877, and the ultimate question in the case is whether the instruments set forth in the petition, taken in connection with all material averments in the petition, which being confessed by the demurrer are to be taken as true, do or do not constitute such a voluntary assignment for the benefit of creditors as the act cited provides for. If they do, the County Court had jurisdiction to do what it has done; if they

do not, the court had no jurisdiction in the matter. Ide v. Sayer, 30 Ill. App. 210; 129 Ill. 230.

True, the appellee, being a creditor of Howell, and claiming that he had made such an assignment, might present to the County Court his petition to have the assets administered under the supervision of the court, and upon such petition the court must decide the question presented by the petition, and so expressly or by implication determine the question of its own jurisdiction. But if it decided that such an assignment has been thus made, and that therefore it has jurisdiction, when the fact is the other way, its further action to enforce what it wrongly held to be such an assignment, is without jurisdiction. Farwell v. Cohen, 28 N. E. Rep. 35.

Nothing that has been said by courts as to what transactions were fraudulent against creditors, either upon bills in equity by such creditors, as in Nesbit v. Digby, 13 Ill. 387, and Phelps v. Curts, 80 Ill. 109, or upon attachments by them, as in Selz v. Evans, 6 Ill. App. 466, helps us to decide whether such an assignment as the present statute governs, exists here.

Nor if the case of White v. Cotzhauser, 129 U. S. 329, were followed by the courts of this State, would it be material to inquire whether the transaction between Howell and the bank could be attacked upon the doctrine of that case, because of such a controversy only a court of general equity powers would have jurisdiction.

Decisions in other States upon their statutes need not be referred to, as what has been said by the Supreme Court of this State is enough for our guide. What that court has said, except in Farwell v. Cohen. 28 N. E. Rep. 35, upon the subject of what does and what does not constitute an assignment under the statute, has been said in cases where attacks have been made by creditors upon the disposition of property by insolvent debtors, not as claiming that such dispositions were assignments under the statute, but, as urged by defeated creditors, that they were constructively fraudulent because they were evasions of the statute. Thus in Preston v. Spalding, 120 Ill. 208, where judgments confessed, were, under the circumstances, held to be evasions of the statute for which a court of equity

392 APPELLATE COURTS OF ILLINOIS.

VOL. 41.]   First Nat. Bk. of Chicago v. North Wis. Lumber Co.

would give relief, it was said of a debtor that, "notwithstanding this act, he may now, as heretofore, in good faith sell his property, mortgage or pledge it, to secure a *bona fide* debt, or create a lien upon it, by operation of law, as by confessing a judgment in favor of a *bona fide* creditor." And in Schroeder v. Walsh, in the same volume, 403, the same judge writing, in a case where the attack was under an attachment against the debtor, says: " In the absence of any bankrupt law or statute to the contrary, the law is well settled that a debtor in failing circumstances, not seeking the benefit of the general assignment law, may prefer one creditor to another equally meritorious, if done in good faith. * * * That act applies only to conveyances of property to an assignee or trustee, in trust, to convert the same into money for the benefit of creditors of the assignor."

These quotations have before been made in this court by Judge Moran in Farwell v. Nilson, 35 Ill. App. 164, in an opinion adopted by the Supreme Court as their own in the same case, 133 Ill. 45; the question there being, whether preferences obtained through judgments confessed by an insolvent, who made no assignment, could be avoided by another judgment creditor filing a creditor's bill in equity; which question was decided in the negative. Next came Weber v. Mick, 131 Ill. 520, where a debtor, a merchant in greatly embarrassed circumstances, unable to meet his indebtedness as it matured, executed to his creditors chattel mortgages upon his whole stock of goods, and delivered the goods to the mortgagees. The goods were attached by another creditor and in the contest between the mortgagees and that creditor, the court cite with approval Vermont cases that hold that "if a debtor conveys his property directly to creditors for their benefit, and no trust is created for others, the transfer is to be regarded as a mortgage or pledge, and not as an assignment." Then the court for themselves say: " The principles above laid down are entirely in harmony with the construction placed upon our voluntary assignment law in Schroeder v. Walsh, 120 Ill. 403. * * * It is clear upon the principles established by the authorities above cited that they

(the instruments in question) were mere chattel mortgages, executed for the sole benefit of the mortgagees, and creating no trust in favor of any of the creditors of the mortgagor. It is clear, then, that they did not constitute voluntary assignments for the benefit of creditors, within the meaning of the statute." In Farwell v. Cohen, 28 N. E. Rep. 35, the Supreme Court do hold that an instrument, not intended by the parties to it to be an assignment under the statute, did take effect as such. The instrument was in form a bill of sale by Silverman to Cohen of a stock of goods, reciting indebtedness to several persons, a small percentage of which was to Cohen himself; the desire of Silverman to secure the payment thereof; and providing that Cohen should take the goods "in trust" to sell and pay those debts in a certain order—and upon that feature of trust, copying with approval much that is said in Schroeder v. Walsh, 120 Ill. 403, Weber v. Mick, 131 Ill. 520, and Farwell v. Nilson, 133 Ill. 35, to the effect that an assignment, to be treated as such under the statute, is a conveyance in trust for creditors, and upon that feature of trust only, they hold that the instrument there in question was such an assignment. We must then regard it as settled law in this State, that a transfer of property and choses in action by an insolvent to his creditor direct, for the purpose of securing or providing the means of payment of that creditor, and of that creditor only, is not a voluntary assignment for the benefit of creditors under the statute of 1877. All charges of fraud and collusion are foreign to the question of the jurisdiction of the County Court. It has no general equity powers. It matters not what the transaction between Howell and the bank may be, if it is not what the statute provides for as a voluntary assignment for the benefit of creditors; if creditors wish to attack it, they must go elsewhere than to the County Court; with the single exception that if they choose to risk an attachment of the property transferred, or proceed by garnishment, they may resort to that court in the exercise of its ordinary jurisdiction at law, for amounts not exceeding $1,000.

With all the charges of the petition as to the relations between Howell and the bank, and their dealings with each

other, taken as true, no trust for other creditors of Howell—no glimpse of benefit to them in any contingency—can be found.

That the bank is placed under obligation to exercise reasonable diligence and fidelity in realizing upon the assets transferred, and applying the proceeds to the payment of the debts of Howell to the bank, is true, and doubtless he might have an account in equity of their doings, but that does not constitute technically a trust in the bank, even for Howell.

The position of the bank is like that described by the Supreme Court in Griffin v. Marine Co., 52 Ill. 130, where they say: "In a limited sense, and for some purposes, the mortgagee in possession for condition broken, and without foreclosure, is a trustee, yet he is not so in a strict sense and for all purposes." If Howell should pay his debts to the bank, he would be entitled to a return of all the assets undisposed of, and if any surplus of assets, or proceeds thereof, should remain after such payment from the assets, he would be entitled to it, and no action or suit would lie by any other creditor of Howell directly to prevent such return, though it might be prevented, perhaps indirectly, by a levy of process against him, or by a judgment creditor's bill or garnishment.

We do not deem it material to inquire by what name the instruments made to the bank by Howell should be called; whether mortgages, pledges, assignments as collateral security or nondescripts.

Sufficient for this case, to oust the jurisdiction of the County Court, it is, that they do not constitute a voluntary assignment for the benefit of creditors under the act of 1877, and therefore the judgment of the County Court is reversed and the petition dismissed.

*Judgment reversed and petition dismissed.*