JOSEPH DAVIS, CORY & CO.

*v.*

THE CHICAGO DOCK COMPANY.

*Filed at Ottawa June 15, 1889.*

1. INSOLVENT DEBTORS—*general assignment—what will pass thereby.* Under a general voluntary assignment of all the property of a firm and of the several partners, the interest of the firm or of an individual partner in real estate will pass to the assignee, though not included in the schedule of assets.

2. SAME—*title of assignee—subject to prior equities.* The assignee, under a voluntary assignment of insolvent debtors made for the benefit of creditors, takes no greater interest or better title than his assignor possessed. His title will be affected with every infirmity, and be subject to all the equities, that existed in respect thereof in the hands of the assignor.

3. Same—*powers and duties of the assignee—jurisdiction of the county court.* The assignee of an insolvent debtor, having due regard to the administration of the estate and to the rights of creditors, may do whatever his assignor might have done in respect of the assigned property if no assignment had been made. The assignee must act under the supervision and control of the county court, and may, under its direction, do what is necessary for the most advantageous, final and complete settlement and distribution of the trust estate.

4. The statute gives the county court the power to direct and control the assignee at every step in the progress of the settlement of the estate, and the assignee is required, at all times, to act in accordance with its mandate and under its supervision.

5. The county court has jurisdiction and power, in the first instance, to determine what property has passed to the assignee, and the nature and extent of the interest acquired by him therein under the assignment. Indeed, it is by the statute required to do so.

6. It does not follow that the county court is given jurisdiction in causes of a purely equitable nature, or that it may adjudicate in respect of property not in the possession or control of the assignee. If that court seeks to compel the assignee to reduce to possession property held adversely, its power will end with the enforcement of its order on the assignee to proceed in the forum having jurisdiction of the action requisite for that purpose.

7. While the county court has jurisdiction to direct the assignee in all matters pertaining to the administration and settlement of the estate, and to settle all controverted questions relating to the property in possession of the assignee, nevertheless, if the assignee seeks to recover property, either at law or in equity, he must resort to the courts having jurisdiction of the appropriate remedy and competent to afford adequate relief.

8. Where a large body of property has been sold *en masse* by a sheriff, on execution, for a grossly inadequate price, without any prior demand by the officer of the defendant for payment, so that a court of equity would set aside the sale on payment of the price for which the sale was made, and the holder of the sheriff's deed makes a general assignment of all his property for the benefit of his creditors, the county court will have jurisdiction to find that the only interest acquired by the sale is the right to be reimbursed the amount bid at the sale, with interest, and direct the assignee, on payment of that sum, to quitclaim the property to the defendant in the execution.

9. Sale on execution—*inadequacy of price—prior demand of payment—remedy in equity.* Where a sheriff's sale on execution is fairly and openly made, after due notice, and without any circumstance impeaching its fairness, inadequacy of price, however gross, is not, *per se,* sufficient evidence of fraud to avoid the sale.

10. But where property has been sold upon execution, or at judicial sale, at a grossly inadequate price, even slight circumstances indicating unfairness or fraud, either upon the part of the officer, the purchaser, or the party to the record benefited by the sale, will furnish sufficient ground for equitable interposition. While gross inadequacy of price will not, of itself, be sufficient, yet, when coupled with other circumstances tending to prove fraud, it becomes controlling and conclusive evidence, and justifies equitable interference to prevent the consummation of an inequitable result.

11. In an action of replevin, the plaintiff recovered judgment, by default, for one cent and costs, upon which an execution issued, and was returned wholly unsatisfied, the defendant being entirely solvent and able to pay. Plaintiff's attorney sued out an *alias* execution, and directed its levy on property worth $350,000, and the sheriff to advertise and sell as soon as possible, which was done without any demand of payment from the defendant, or notice to him. The property was sold for $17.25, and a deed was taken on the sale: *Held,* that the failure of the officer to demand payment before the levy and sale, together with the gross inadequacy of price, would justify a court of equity in setting the sale aside on equitable terms.

WRIT OF ERROR to the County Court of Cook county; the Hon. RICHARD PRENDERGAST, Judge, presiding.

The Chicago Dock Company is a corporation engaged in the dock and warehouse business in Chicago. The Lyman Manufacturing Company, managed by Sherman & Marsh, stored wire in the warehouse of the dock company, for which warehouse receipts were issued, but which were subsequently taken up and delivery orders issued instead. Sherman & Marsh demanded delivery of the wire to them without return of the delivery orders, alleging their loss. The dock company refused to make the delivery without the giving of an indemnifying bond by Sherman & Marsh, which they refused to give, and brought replevin for the wire. The wire was taken under the writ, and delivered to Sherman & Marsh, and the writ served upon the secretary of the dock company, its president not being found, etc. On the 21st day of September, 1881, default was entered against the Chicago Dock Company, and judgment rendered, finding property in the plaintiffs, Sherman &

Marsh, and against the defendant, for one cent damages and costs.  Execution issued thereon September 23, 1881, which on December 22, 1881, was returned "no part satisfied." *Alias* execution issued January 27, 1882, and came to the sheriff's hands the same day, with instructions by the attorney of said plaintiffs to levy the same upon all of the dock company's interest in block 74, school section addition to the city of Chicago, "together with all the buildings and improvements thereon, and advertise the sale as early as possible."  On the same day the sheriff levied accordingly, and, after advertising the sale, on the 27th day of February, 1882, at ten o'clock A. M., sold the entire property to said attorney of the plaintiffs for $17.25, being for the amount of said judgment and costs, the items being:

| | |
|---|---:|
| Judgment, | $ .01 |
| Costs in replevin suit, | 8.75 |
| Interest from September 21, 1881, | .24 |
| Sheriff's fees on execution, | 4.25 |
| Costs of advertising, | 4.00 |
| Total | $17.25 |

Certificate of sale was issued to the attorney, and recorded. Subsequently the certificate was assigned to one of said plaintiffs, Eben J. Marsh, and January 5, 1883, a sheriff's deed, in pursuance thereof, was made to said Marsh, and recorded the same day.  The dock company purchased block 74, so sold, in 1863, and occupied it continuously, paying all taxes assessed thereon, since its purchase.  The property levied upon and sold by the sheriff was then and is now worth at least $350,000, and was clear of incumbrance.  The dock company, or any of its officers, had no actual notice of the rendition of the judgment in replevin, or of the issue or levy of the execution, or of the sale of or deed to the premises by the sheriff, until in October, 1887, when, upon having the abstract of title to their property brought down, the sheriff's

deed was discovered of record. It is alleged, and is uncontra-
dicted, that at all times since the date of said judgment the
company has been abundantly able to satisfy the same, and
which it alleges it would have done on being notified thereof,
and that Sherman & Marsh knew that fact. The bill of ex-
ceptions shows that ill-feeling existed, on the part of Marsh,
toward the president of the dock company, and that said *alias*
execution was taken out because thereof.

Subsequently to the making and recording of said deed,
Sherman & Marsh made an assignment for the benefit of their
creditors, under the Voluntary Assignment act, under which
Noble B. Judah was appointed assignee, and qualified. The
property in controversy was not scheduled by the debtors as
assets. On the 28th day of October, 1887, the Chicago Dock
Company presented its petition in the county court of Cook
county, setting up substantially the foregoing facts, and asking
that it be permitted to pay the assignee, for the use of the es-
tate, the amount of the said judgment and costs, with interest,
and that the assignee be directed to quitclaim to the petitioner,
etc. The county court, upon hearing of the matters alleged,
entered an order *nisi*, granting the prayer of the petition,
unless cause be shown to the contrary within ten days from
the entry of that order, and directing notice to be served on
creditors, which was done. The plaintiffs in error alone ap-
peared and filed objections to the order, and also filed a cross-
petition for a rule on the assignee to reduce the real estate in
controversy to possession, and to convert the same into money,
for the benefit of the estate, etc. The county court, upon fur-
ther hearing upon the petition and cross-petition, entered its
order dismissing the latter, and ordered the assignee, upon
payment to him of $100, to make, execute and deliver to the
Chicago Dock Company his quitclaim deed to the property
mentioned, and that he receive said sum of $100 in full sat-
isfaction of said judgment and costs, and his attorney's fees,
and all other claims against said company in respect of said

property. It appears that the assets in the hands of the assignee are insufficient to pay the creditors of the estate in full. This writ of error is prosecuted by Joseph Davis, Cory & Co., cross-petitioners and creditors of the insolvent firm, to the county court of Cook county, to reverse said order.

Messrs. Eliel & Rosenthal, for the plaintiffs in error:

As to the jurisdiction of the county court over assigned estates, see *Hanchett* v. *Waterbury*, 115 Ill. 220, and *Freydendall* v. *Baldwin.* 103 id. 325.

If, at the time of making the assignment, the title to the property did not belong to Marsh the assumption of jurisdiction by the county court was unauthorized; but if it belonged to him, the county court had dominion over it, but had no right to divest the assignee of his title, or to direct any disposition of it except for the benefit of the creditors.

An assignee succeeds only to such rights as his assignor had. Burrill on Assignments, (5th ed.) 621; *O'Hara* v. *Jones*, 46 Ill. 288; *Chase* v. *Chapin*, 130 Mass. 128; *Hathaway* v. *Bank*, 131 id. 14.

One of the principal objects of a voluntary assignment of property for the benefit of creditors, and one of the most important duties of the assignee in the execution of the trust, is the sale of the property assigned, in order to convert it into money for the purpose of distribution among creditors; and every assignee is bound to bring the estate to a sale under every possible advantage to the *cestuis que trust.* Burrill on Assignments, 648, 649; *Paige* v. *Olcott*, 28 Vt. 465; *Geisse* v. *Beall*, 3 Wis. 367; *Downes* v. *Grazebrook*, 3 Mer. 208; *Matthies* v. *Edwards*, 2 Coll. 480; *Chesley* v. *Chesley*, 49 Mo. 540.

The failure of the sheriff to make demand of payment before levying did not invalidate the levy and sale, (*Gardner* v. *Eberhart*, 82 Ill. 316, *Fergus* v. *Woodworth*, 44 id. 378,) and the rescinding of the certificate of purchase was notice of the sale.

Inadequacy of price is no ground for avoiding a sale. *Ballance* v. *Loomiss*, 22 Ill. 82; *O'Callaghan* v. *O'Callaghan*, 91 id. 228; *Hamilton* v. *Quimby*, 46 id. 96; 2 Pomeroy's Eq. Jur. 926.

To give a writ to the sheriff with instructions to make a levy and sale, is simply to deliver the writ to be executed, and this the creditor has the right to do. *McFarland* v. *Gwin*, 31 How. 717; *Weir* v. *Hale*, 3 W. & S. 285.

Messrs. GREGORY, BOOTH & HARLAN, for the defendant in error:

The county court has equitable jurisdiction over assigned estates. *Freydendall* v. *Baldwin*, 103 Ill. 325; *Hanchett* v. *Waterbury*, 115 id. 228; *Field* v. *Ridgely*, 116 id. 432; *Bank* v. *English*, 21 Bradw. 317.

Gross inadequacy of price is evidence of fraud, and ground for avoiding a sale. 2 Pomeroy's Eq. Jur. sec. 927; Kerr on Fraud and Mistake, 186; *Henderson* v. *Sublett*, 21 Ala. 630; *Langford* v. *Jackson*, id. 650; *Chapman* v. *Boetcher*, 27 Hun, 606; *Weber* v. *Weitling*, 18 N. J. Eq. 441; *Taul* v. *Wright*, 45 Texas, 388; *Comstock* v. *Purple*, 49 Ill. 158; *Berry* v. *Lovi*, 107 id. 612; *Duncan* v. *Sanders*, 50 id. 475; *Heberer* v. *Heberer*, 67 id. 253; *Hamilton* v. *Quimby*, 46 id. 90; *Ballance* v. *Loomiss*, 22 id. 82.

As to the duty of the sheriff to postpone the sale in such cases, see *Roseman* v. *Miller*, 84 Ill. 297, and *Ray's Admr.* v. *Womble*, 56 Ala. 32.

No demand was made for payment, although they knew it would be paid instantly, upon demand. This court said, in *Pitts* v. *Magie*, 24 Ill. 614: "It is the first duty of an officer having an execution against a party, to apply to him personally for payment, wherever that is practicable; and the officer should be held responsible to the party aggrieved, for a neglect of this duty, wherever special damages result from it." See, also, *Rock* v. *Haas*, 110 Ill. 529.

Mr. CHIEF JUSTICE SHOPE delivered the opinion of the Court:

Two questions are presented by this record: First, had the county court, under the Voluntary Assignment act, jurisdiction to determine the interest of the assignee in the property in controversy, and to authorize and require him to receive payment for such interest, and execute an acquittance of the claim of the assignor upon receipt of the same; and second, do the facts here shown authorize the entry of that order by the county court, if it had such jurisdiction.

By the sheriff's deed of June 5, 1883, Eben J. Marsh, one of the assignors, became clothed with the legal title to real estate of the value of at least $350,000; and although this property was not scheduled, either as the individual property of Marsh, or as assets of the firm of Sherman & Marsh, assignors in the deed of assignment subsequently made, yet the interest of Marsh and of the firm, if any, would and did, as being comprehended within the general terms of the assignment, vest in the assignee for the benefit of creditors. The assignee, however, took no greater interest or better title than his assignors possessed. In his hands the title was affected with every infirmity and subject to all the equities that existed in respect thereof in the hands of the grantor in the deed of assignment. It becomes necessary, therefore, to determine what interest Marsh took by virtue of the sheriff's deed, and, logically, that determination would precede the discussion of the question of jurisdiction.

It is conceded that in making the sale and deed the sheriff proceeded in substantial compliance with the forms of law, and if there were no equitable considerations affecting the same, the title of the defendants in execution thereby became vested in Marsh. It is apparent, however, that there are strong equitable reasons why the sale, and deed thereunder, should not be allowed to stand. Real estate of the value of $350,000 and over was levied upon and sold to satisfy a judg-

ment of one cent and costs, which, with interest, and costs on execution, amounted, at the time of the sale, to the sum of $17.25—less than one twenty-thousandth part of the value of the property sold. In *Comstock* v. *Purple,* 49 Ill. 158, we said: "Admitting the lands sold for an inadequate price, the doctrine of this court is, that, of itself, is not sufficient," (to avoid the sale,) ."unless it should be so grossly inadequate as to establish fraud." It would seem that if a case could arise where gross inadequacy would establish fraud, this one would do so. Public policy, however, requires that judicial sales should be upheld, when fairly and regularly made. The better rule, and the one sustained by the weight of authority, is, that generally, in sales made under judicial process, gross inadequacy of price, unaccompanied by circumstances of irregularity, or that indicate unfairness in the conduct of the officer making the same, or the purchaser thereat, will not create the inference of fraud. Where the sale is fairly and openly made, after due notice, with a fair opportunity for real competition, and without any circumstance impeaching its fairness, inadequacy of price, however gross, is not, *per se,* sufficient evidence of fraud to avoid the sale. *Hamilton* v. *Quimby,* 46 Ill. 90.

Many cases are to be found in the books, which seem to apply the principles to sales upon process that are applicable to sales of private property. Kerr on Fraud and Mistake, (4th Am. ed.) 186. But an examination of the cases, it is believed, will show, that in nearly if not quite all, the application to vacate the sale was by motion in the court from which the process issued, or where there were irregularities affecting the process, or affecting the conduct of the officer in making the sale, or of the purchaser, or of the party to the record, which were regarded as sufficient to render it unconscionable that the purchaser should retain the undue advantage obtained by his purchase. See *Henderson* v. *Sublett,* 21 Ala. 630; *Webber* v. *Weitling,* 18 N. J. Eq. 441; *Hodgson* v. *Farrell,* 15 id. 88; *Taul* v. *Wright,* 45 Texas, 288; 2 Pomeroy's Eq. 927. How-

ever this may be, the authorities are uniform that where property has been sold, upon execution or at judicial sale, at a grossly inadequate price, even slight circumstances indicating unfairness or fraud, either upon the part of the officer, the purchaser, or the party to the record benefited by the sale, will furnish sufficient ground for equitable interposition. The conscience of the chancellor, quickened by proof of circumstances indicating that an unfair advantage was sought or taken, will seize upon the gross inadequacy as additional and strong evidence of fraud, and, by decree, prevent the purchaser from reaping an unconscionable advantage. Thus, in *Hamilton* v. *Quimby, supra,* it was said, that if the execution had been properly issued, and the officer had performed his duty by giving the defendant notice of the writ, and a sale had been made of a large amount of property for a very small sum of money, "the sale ought not to have been set aside for mere inadequacy of price; but even then, where there is such gross inadequacy, the court will seize upon anything indicating unfairness in the plaintiff, to afford relief." See, also, *Comstock* v. *Purple, supra; Kinney* v. *Knoebel,* 51 Ill. 112; *Berry* v. *Lovi,* 107 id. 612; *Howell* v. *Baker,* 4 Johns. Ch. 122; *Klœpping* v. *Stellmacher,* 21 N. J. Eq. 328; *American Wine Co.* v. *Scholer,* 85 Mo. 496; *Johnson* v. *Craul,* 55 Texas, 571; *Seaman* v. *Riggins,* 1 Green's Ch. 214; *Bixby* v. *Mead,* 18 Wend. 611; *Roberts* v. *Roberts,* 13 Gratt. 639; *Bod* v. *Ellis,* 11 Iowa, 97, and cases *supra.*

It will not be necessary to extend this opinion by quotation from the cases. Upon examination it will be found that various incidents have been seized upon by the courts to grant relief where there has been a gross inadequacy of price; and the additional circumstances need not be sufficient, in themselves, to authorize the sale to be set aside, if they tend to show that an unfair advantage was taken, or that the sale was conducted in a manner prejudicial to the rights or interest of the parties interested, for while gross inadequacy of price will not, of itself, be sufficient, yet, when coupled with other

circumstances tending to prove fraud, it becomes controlling and conclusive evidence, and justifies the interference by a court of equity to prevent the consummation of an inequitable result.

Tested by this rule, it is at once apparent that this sale and deed, upon proper bill filed for that purpose, would have been set aside. The dock company was bailee of the goods and chattels replevied, and it is evident that in their refusal to deliver the goods upon the request of Sherman & Marsh, without the return of the delivery receipts issued by them, they only sought to shield themselves from responsibility against a wrongful delivery of the goods. It is true they were served with process in the replevin suit, but, having no further interest in the goods replevied, paid no attention whatever to the result of that suit. It is shown that they had no actual notice of the rendition of the judgment or issue of execution thereon. The first execution, while it is apparent that the dock company had ample property in the county subject to levy, was returned by the sheriff not satisfied. No demand was made of the defendant for property upon which to levy, or notice given of the execution, although the defendant was in the county, and its office within a few minutes' walk from the sheriff's office. An *alias* execution was issued on the 27th day of January, 1882, and came to the sheriff's hands the same day, who was instructed by the attorneys for the plaintiffs therein to levy upon all the dock company's interest in block 74, school section addition to the city of Chicago, together with all the buildings and improvements situated thereon, and to advertise and sell as early as possible. The sheriff levied accordingly the same day, and at ten o'clock A. M. of the 27th of February, 1882, sold the property *en masse* to the attorney of the plaintiffs for $17.25. It is true that a certificate of purchase was recorded March 1, 1882, that the same was subsequently assigned to Marsh by said attorney, and upon the expiration of redemption a deed for the property was

made to Marsh.   It was the duty of the sheriff to notify the defendant in execution before making the levy, and apply to it for payment of his execution. *(Pitts* v. *Magie,* 24 Ill. 610 ; *Rock* v. *Haas,* 110 id. 529.)   A defendant in execution has a right to pay and satisfy the same, and it is unfair and unjust to him that a levy should be made without an opportunity to make such payment, and thereby save incurring additional costs.   It was said in the *Pitts case* :  "It is the first duty of an officer having an execution against a party, to apply to him personally for payment, wherever that is practicable, and the officer should be held responsible to the party aggrieved, for a neglect of this duty, wherever special damages result from it."

It is averred and shown in this case, that the defendant in execution had ample property, and was able to, and would, upon demand or notice, have satisfied the execution.   It is not necessary to hold, nor do we determine, that the failure of the officer to make the demand would be sufficient, of itself, in a case where the levy was upon real estate, to avoid the sale. But in this case it is not shown or pretended that there was any necessity for levy upon this large amount of property, or that the sale should be made in the shortest time possible, nor is any excuse given for not pursuing the ordinary course and making the demand before making the levy.   While the officer failed to perform his duty in the respect indicated, under either execution, it appears that in making the levy and sale he acted under the direction of plaintiffs' attorney.   The attorney was careful to direct the levy upon the whole block, and upon all the buildings and improvements thereon, and to sell the same as early as possible.   It is manifest that any division of the block would have satisfied the execution.   Nor is there any reason why this vast amount of property should be advertised and sold for this insignificant sum, within thirty days from the date of the execution, without any actual notice to the defendant thereof, or demand for its payment.   It seems clear that it was not the payment of the execution, alone, that

was sought by the plaintiffs' attorney. Whether the animosity shown in the record to have existed on the part of the plaintiffs in execution against the president of the dock company, may furnish the clew to this proceeding, or whether it was to gain some unconscionable advantage by placing a cloud upon the title of the dock company, can make no difference. By the course pursued, if the sale was discovered, plaintiffs in execution would get their money, with costs. If, however, it remained undiscovered, a cloud would be created to the injury of the dock company, and possibly to the advantage of Marsh. It can not be doubted, that upon the state of facts here shown a court of equity would at once have declared the sale and deed void, and removed the same as a cloud on appellee's title. At most it would have been found and declared that Sherman & Marsh, or Marsh, would have had no other interest, and acquired no other right, under said sale and deed, than to be reimbursed the amount of money bid at the sale.

The question remains to be considered, had the county court jurisdiction to determine whether the real estate in question passed to the assignee, under the assignment, and became assets in his hands, to be applied in satisfaction of the claims of creditors.

By the first section of the Voluntary Assignment act the effect of a voluntary assignment for the benefit of creditors is to vest in the assignee title to all the property of the debtors, whether scheduled or not, comprehended within the general terms of the assignment. By the 11th section of the act the assignee is empowered to dispose of the assigned estate, real and personal, to sue for and recover everything belonging or appertaining to said estate, "and, generally, to act and do whatever the said debtor or debtors (assignors) might have done in the premises." The duty of the assignee under this authority is, to collect and convert the estate assigned, into money, and to distribute the same *pro rata* among the creditors proving their claims in conformity with the statute. This

is to be done under the supervision and direction of the county court. The 7th section of the act provides, "that the assignee or assignees, in the execution of assignments, shall, at all times, be subject to the order and supervision of the county court, when in session, or judge of said court, when not in session;" and the assignee may, by the court, be required "to proceed in the faithful execution of the duties required by this act, and to obey the order of such court or judge in relation to the complete and final settlement, distribution and paying over of the proceeds derived from said trust, or any part thereof, until final settlement and distribution is made."

It would seem clear that the assignee, having due and proper regard to the administration of the estate and to the rights of creditors, may do whatever the debtor or debtors might have done in respect of the assigned property, if no assignment had been made. It is, we think, also clear, that the assignee must act under the supervision, direction and control of the county court, and may do, under such direction, what is necessary for the most advantageous, and the final and complete, settlement and distribution of the trust estate. By the 14th section of the act, full authority and jurisdiction is "conferred upon the county courts, and the judges thereof, to execute and carry out the provisions of this act," and it is provided that the court shall, at all times, be open for the transaction of business relating to assignments. The power to direct and control the assignee at every step in the progress of the settlement of the estate is thus clearly given to the county court, and the assignee is required at all times to act in accordance with its mandate and under its supervision. *Freydendall* v. *Baldwin,* 103 Ill. 325.

One of the duties imposed upon the assignee is to determine what property passed to him under the assignment, to reduce it to possession, and convert it into money, and it follows that in so doing he must, as in other matters, act under the con-

13—129 Ill.

trol of the court and subject to its directions. If questions should arise whether particular property passed under the assignment, he must act under the direction of that court in respect thereof; and full power, as we have seen, is given by the statute to the court to execute and carry out the provisions of the act, and to compel the complete and final settlement of the estate by the assignee. It necessarily follows that the county court must, in the first instance, determine what property has passed to the assignee, and the nature and extent of the interest acquired by him therein under the assignment. So that if we are correct in our conclusion, it became the duty of the county court, in the exercise of its supervisory power and control over the assignee, to determine what interest, if any, the assignee took in the property in controversy, and we are of opinion it was authorized and required by the statute so to do. If the court had determined that the property was assets belonging to the estate, it would have been its duty, by proper order, to have directed the sale of the property with or without reducing it to possession, as might have been found best for the interest of the estate. It by no means follows from what is here said, or from the statute as we understand it, that the county court is given jurisdiction in causes of a purely equitable nature, or that it may adjudicate in respect of property not in possession or control of the assignee. (*Preston* v. *Spaulding,* 120 Ill. 208.) If the county court had sought to compel the assignee to reduce the property to possession, its power would have ended with the enforcement of its order on the assignee to proceed in the forum having jurisdiction of the action necessary and requisite for that purpose, for while the county court has jurisdiction to direct the assignee in all matters pertaining to the administration and settlement of the estate, and to settle all controverted questions relating to property in possession of the assignee, and therefore under its administrative control, nevertheless, if the assignee seeks to recover property, either at law or in equity, he must resort to

the courts having jurisdiction of the appropriate remedy, and competent to afford adequate relief.

It is manifest from the foregoing, that the county court, however it might be called into action, was clothed with authority to decide for the assignee the nature and extent of the interest in this property, if any, held by Marsh, and passing to him under the assignment; and it was competent for that court to adjudge, if the facts warranted, that the assignee had become seized of the entire estate, or of any less interest or estate, and direct that whatever that interest might be should be realized upon by the assignee. The court found, as it was justified in doing, that while the legal title had become vested in the assignor, in fact the only interest acquired, if any, was the right to be reimbursed the amount bid at the sale of the land on execution, with legal interest thereon. Nor does this finding by the court involve the jurisdiction of a court of chancery,—as, upon bill filed by the dock company to set aside said sale and deed. The authority of the court arises from the express power given by the statute to that court to control the management and settlement of the estate, and direct the assignee in the execution of the trust. It is true that the court is required to look into the facts, and to find therefrom that the sale and deed of the sheriff were fraudulent, and that in a court of equity would be cancelled and set aside,—that is, to find that the assignor (Marsh) had no title in fact, and that none passed to the assignee, and that the only interest in the property that could be rightfully subjected to the payment of the debts of the estate was the judgment, interest and costs before mentioned. That this was all the interest Marsh had, was clearly and conclusively established. If the assignor had held a deed absolute to a tract of land, but which confessedly, by the contract of the parties, was intended to be a mortgage for the payment of money only, can it be doubted that the county court would have power, under this statute, to ascertain the amount actually due, and to au-

thorize the assignee to receive the same and execute a proper release? The only distinction between that case and this is, that in the one the equity arises out of the contract of the parties, while in the other it arises from the fraudulent act of the parties in procuring the deed. This power is essential to the proper administration of the estate. It was not contemplated that the county court must needs compel the assignee to proceed to expensive and fruitless litigation, and thereby exhaust the trust funds in his hands. The court having power so to do, and having determined that the real estate in question was not assets of the estate, properly dismissed the cross-petition of plaintiffs in error; and in the subsequent orders made, requiring the assignee to receive a sum of money far in excess of any claim the assignors had against the dock company; and to release and quitclaim his apparent interest acquired under the assignment, committed no error of which plaintiffs in error can complain.

From what has been said, it must be apparent that so far as the action of the county court was concerned, in determining the issues raised by the cross-petition, the direct question was, had the title to the block of land in controversy passed to the assignee. If it had become assets in his hands, the assignee should have been required to proceed in accordance with the prayer of the cross-petition. If it had not, he would be ordered by the court, — and properly so, — as he was, in effect, to desist from interfering therewith. When this was done the dismissal of the cross-petition properly followed.

We are of opinion that the order of the county court should be affirmed.

*Order affirmed.*