JANET SMITH

*v.*

JAMES B. GOODMAN, Assignee.

*Filed at Ottawa November 29, 1893.*

149    75
162   443
54a   610
58a   296
58a   642

149    75
163   127
59a   339
62a   319

149    75
64a   139

149    75
165    37
67a   227
68a   512

149    75
168   447

149    75
72a   415
72a   420

149    75
92a  9379

1. INOSLVENT DEBTORS—VOLUNTARY ASSIGNMENT—*assignment passes leasehold interest though not scheduled.* A general assignment by an insolvent debtor of all his lands, tenements, hereditaments and appurtenances, goods, chattels, accounts, etc., of every kind and description, personal and mixed, will pass a leasehold interest, although not named in the schedule of his property, to which reference is made in the deed of assignment for a particular enumeration of the assigned property.

2. The failure of the assignor to enumerate specifically in the inventory every item of property or each chose in action, claim or demand, can not have the effect of limiting the grant, so that property of the debtor comprehended within the general terms of the deed shall not pass by the assignment.

3. Where the deed of assignment is general of all the debtor's property, it will all pass to the assignee, whether specifically named in the inventory or not.

4. SAME—*whether assignee liable to lessor for rents.* Ordinarily, where a lease is assigned, expressly or specifically, the assignee, by accepting the assignment, will be held to accept the leasehold estate and to render himself liable to perform the covenants.

5. SAME—*acceptance of the trust by assignee.* On an assignment for the benefit of creditors, especially under the statute, when the estate is to be administered by the assignee under the order and direction of the court, the acceptance of the deed by the assignee is only to be regarded as an acceptance of the trust upon which the property is assigned, and it makes no difference whether the property passes by operation of law or by the terms of the deed.

6. SAME—*assignee may refuse to accept a leasehold estate.* An assignee of an insolvent debtor may accept the deed of assignment and enter upon the execution of the trust without becoming assignee of a lease held by the insolvent, unless he elects to do so, as it may be so burdened with covenants as to be worthless as an asset of the estate. And the assignee will be entitled to a reasonable time in which to ascertain whether the leasehold can be made available for the benefit of the creditors or not.

7. SAME—*acceptance of lease by assignee—within what time, etc.* There is not an entire uniformity in the decisions as to when the assignee will be held to have accepted a leasehold interest assigned to him, and to have bound himself to perform the covenants in the lease, and no general rule can be laid down as to the effect of specific acts of the assignee in determining whether there has been an election to take the leasehold as a part of the assigned property.

8. It seems that the assignee will not be held to have accepted a lease assigned to him, with other property, unless it be shown that he has done so. expressly, or by unequivocal acts inconsistent with the right of entry by the landlord has indicated such election to appropriate the leasehold estate.

9. SAME—*claim against assigned estate.* Where a lessee makes a general assignment for the benefit of creditors, any damages resulting to the lessor for a breach of the covenants of the lessee will become a claim against the assignee, which may be proven against the estate the same as other claims, but such claims will not be entitled to priority over other claims.

10. SAME—*presentation of claims.* Where the lessor, in proper time, filed his petition claiming damages for breach of the covenants of the debtor in his lease, properly verified, the court reserved the question of the liability of the assignee, and the lessor afterward filed his supplemental petition for damages subsequently accruing, it was *held,* that such verified petition was a presentation of the lessor's claim, and that it was error to dismiss the original and amended petitions. and that it was the duty of the county court to allow the actual damages of the lessor.

11. LEASE—*waiver of covenant not to assign lease.* A covenant of the lessee in a lease not to assign or sub-let the demised premises without the written consent of the lessor, being for the benefit of the latter, he alone can insist on the same, and he may waive it if he sees proper.

12. SAME—*covenant against transfer of lease by operation of law.* A covenant in a lease that the lessee will not assign the same, or permit any transfer, by operation of law, of the interest in the premises acquired under the lease, is violated by a general voluntary assignment of the lessee, as well as by the subsequent entry of the assignee thereunder.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the County Court of Cook county; the Hon. FRANK SCALES, Judge, presiding.

Messrs. Doolittle, Palmer & Tolman, Mr. C. B. Simons, and Mr. Samuel B. King, for the plaintiff in error:

A general assignment passes to the assignee the title to all real and personal property of the assignor. *Lowe* v. *Matson,* 140 Ill. 108; Burrill on Assignments, (5th ed.) sec. 105.

The law elects that the assignee shall take every leasehold. Taylor on Landlord and Tenant, secs. 451, 456; *Babcock* v. *Scoville,* 56 Ill. 461; *Lowe* v. *Matson,* 140 id. 108; *Preston* v. *Spaulding,* 120 id. 208; *Bouton* v. *Dement,* 123 id. 142.

Independent of the Assignment act the assignee has no election. 2 Taylor on Landlord and Tenant, sec. 458; *White* v. *Hunt,* L. R. 6 Exch. 323.

A covenant that the lessor may, upon the abandonment of the premises by the lessee, re-let the same, charging the deficiency to the lessee, is binding. 2 Taylor on Landlord and Tenant, (8th ed.) sec. 451; *Ogden* v. *Rowe,* 3 E. D. Smith, 312; *Auer* v. *Penn,* 99 Pa. St. 370; *Hancock* v. *Stevenson,* 1 B. & A. 303; *Becker* v. *Wulworth,* 45 Ohio St. 169.

The covenant not to assign the lease is one for the benefit of the lessor alone, and he may waive it. 1 Wood on Landlord and Tenant, (2d ed.) 711; *Sexton* v. *Storage Co.* 129 Ill. 318.

The election on the part of the assignee must be made at the earliest opportunity, and once made he can not recede from it. *Hansen* v. *Stevenson,* 1 B. & A. 305; *Welch* v. *Myers,* 4 Camp. 468; *Clark* v. *Hume,* Ryan & Moody, 207; *Carter* v. *Warne,* 1 C. & P. 191; *Thomas* v. *Pemberton,* 7 Taunt. 206; *Dorrance* v. *Jones,* 27 Ala. 633; *Horwitz* v. *Davis,* 16 Md. 317; *Commonwealth* v. *Insurance Co.* 115 Mass. 282.

Messrs. Herrick, Allen & Boyesen, for the defendant in error:

There was no assignment of the lease to the assignee. *Randlett* v. *Dole,* 10 N. H. 458; *Beard* v. *Kimball,* 11 id. 471; *Driscoll* v. *Fiske,* 38 Mass. 503; *Wilkes* v. *Ferris,* 5 Johns. 336.

When the assignment is by deed, the assignee becomes liable as such by merely accepting the deed; but if a man becomes assignee by operation of law, he is not, in general, chargeable until he actually enters or does some act showing his acceptance of the lease. Taylor on Landlord and Tenant, secs. 451, 456; *Babcock* v. *Scoville*, 56 Ill. 461.

There was no acceptance of the lease by the assignee. Taylor on Landlord and Tenant, secs. 451, 456; *Goodwin* v. *Noble*, 8 E. & B. 587.

It was only the duty of the assignee to offer a sale of the lease, or to surrender it to the lessor. *Pratt* v. *Snyder*, 1 Miles, 358; *Journay* v. *Brackley*, 1 Hilton, 447; *Harting* v. *Nilson*, 1 Holt. 290; *Turner* v. *Richardson*, 7 East, 335.

The fact that Goodman paid rent for the use of the building until April 30 does not show an acceptance. Such payments are to be regarded as for use and occupation, or on behalf of the insolvent. *Copeland* v. *Stephens*, 1 B. & A. 598; *Journay* v. *Brackley*, *supra*.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The C. J. L. Meyer & Sons Company, a corporation, December 14, 1889, made a general assignment for the benefit of creditors to James B. Goodman, who forthwith accepted and qualified as assignee. On the 9th day of August, 1889, said corporation leased from plaintiff in error, Janet Smith, certain premises for a term commencing September 1, 1889, and ending April 30, 1892, at a monthly rental of $83.33 until April 30, 1890, and $250 thereafter in advance. Said lease contained the following clauses:

Par. 4. "That they (lessees) will not allow said premises * * * to be occupied, in whole or in part, by any other person, and will not sub-let the same or any part thereof, nor assign this lease, without, in each case, the written consent of the party of the first part first had, and will not permit any

transfer, by operation of law, of the interest in said premises acquired through this lease."

Par. 7. "If said party of the second part shall abandon or vacate said premises, the same may be re-let by the party of the first part for such rent and upon such terms as said party may see fit; and if a sufficient sum shall not be thus realized, after paying the expenses of such re-letting and collecting, to satisfy the rent hereby reserved, the party of the second part agrees to satisfy and pay all deficiency."

It is insisted that this leasehold interest did not pass by the assignment to the assignee, for the reason that it was not contained in the schedule referred to in the deed of assignment. This contention is without merit. The granting clause in the deed is as follows: "All and singular the lands, tenements, hereditaments and appurtenances, goods, chattels, accounts, promissory notes, bonds, bills, debts, choses in action, claims, demands, property and effects of every kind and description, real, personal and mixed, belonging to the said party of the first part, or in which it has any right or interest, or which are held by any person or persons for it or in trust for it, except such as is exempt from levy and sale under the laws of the State of Illinois, the same being fully and particularly enumerated and described in an inventory, under the oath of said party of the first part, hereto annexed, marked 'Schedule B,' and made a part hereof." The contention is, that the general words of the grant are limited by the subsequent clause," the same being fully enumerated and described in an inventory * * * hereto annexed, marked 'Schedule B,' and made a part hereof," and that as this leasehold interest was not included in said inventory it is excluded from the assignment.

It will be unnecessary to follow counsel in their discussion of the distinction between a general and a partial assignment. By express provision of the statute the inventory is not conclusive as to the amount of the debtor's estate assigned, but

the assignment "shall vest in the assignee or assignees the title to any other property" not included in the inventory and "not exempt by law, belonging to the debtor or debtors at the time of making the assignment, and comprehended within the general terms of the same." The assignment was of all and singular the lands, tenements, hereditaments and appurtenances, goods, chattels, accounts, promissory notes, bonds, bills, debts, choses in action, claims, demands, property and effects of every kind and description, real, personal and mixed, belonging to the assignor or in which it had any right or interest, and the failure to enumerate specifically in the inventory every item of property, or each chose in action, claim or demand, can not have the effect of limiting the grant, so that property of the debtor "comprehended within the general terms" of the deed shall not pass by the assignment. *(Farwell* v. *Cohen,* 138 Ill. 216 ; *Lowe* v. *Matson,* 140 id. 108.) The assignment being general, was sufficient to pass the title of all the real and personal estate of the assignor comprehended within the general terms of the assignment, whether specifically named in the deed or inventory or not.

It does not, however, follow, that because the leasehold interest would pass to the assignee under the deed he was bound to accept it. Ordinarily, where a lease is assigned, expressly or specifically, the assignee, by accepting the assignment, is held to accept the leasehold estate and render himself liable to perform the covenants. But in an assignment for the benefit of creditors, especially under our statute, where the estate is to be administered by the assignee under the order and direction of the court, the acceptance of the deed by the assignee is only to be regarded as an acceptance of the trust upon which the property is assigned. It can make no difference whether the leasehold estate would vest in the assignee, if accepted by him, by express provisions of the deed or by operation of law. While the assignee stands as the representative of the debtor, *(Bouton* v. *Dement,* 123 Ill. 142,) the

purpose for which he is invested with title to the insolvent's property is, that it may be collected and made available for the payment of the debts of the assignor. It might very well be that a term of years in land might be so burthened with the performance of conditions that it would be wholly valueless for any purpose of the trust. For that reason it has been uniformly held that the assignee may accept the assignment and enter upon the execution of the trust without becoming the assignee of the lease held by the insolvents, unless he elects to do so. *Dorrance* v. *Jones,* 27 Ala. 633; *Horwitz* v. *Davis,* 16 Md. 317; *Martin* v. *Black,* 9 Paige, 644; *Hanson* v. *Stevenson,* 1 B. & A. 305; *Goodwin* v. *Noble,* 8 Ellis & B. 587; *In re Washburn,* 11 Nat. Bank Reg. 66; *Journay et al.* v. *Brackley et al.* 1 Hilton, 447. And the assignee is entitled to a reasonable time in which to ascertain whether the leasehold estate can be made available for the benefit of creditors or not. Taylor on Landlord and Tenant, 458, and cases *supra.*

There is not entire uniformity of decisions as to when the assignee will be held to have accepted the lease and bound himself to perform its covenants, and no general rule can be laid down as to the effect of specific acts of the assignee in determining whether there has been an election to take the leasehold as a part of the assigned property. An examination of the adjudged cases is valuable only as fixing the general principle by which the case is to be governed, which would seem to be, that the assignee will not be held to have accepted the lease, unless it be shown that he has done so expressly, or, by unequivocal acts inconsistent with the right of entry by the landlord, has indicated an election to appropriate the leasehold estate.

We need not pursue this subject further, nor determine whether the acceptance of a lease by an assignee for the benefit of creditors would be conclusive upon him without the approval of the county court, for the reason that, tested by the general principle before adverted to, we are not convinced

6—149 ILL.

that the assignee in this case accepted the lease. It is true a large portion of the assigned estate, consisting of manufactured goods and merchandise, was stored in the demised premises at the time of making the assignment, and was permitted to remain there by the assignee until the 30th of April following the assignment. It is also true that the assignee paid rent up to that date. But the evidence rebuts the presumption that he intended to accept the lease as an asset of the estate. When applied to by the agent of the lessor, he was asked if he could fix a date when he would surrender possession of the premises, and if he could do so by the first of May, as other parties were desirous of renting. He expressed himself as unable to fix the date, and said, in substance that he might desire to retain the lease as an asset. It is undoubtedly the rule that the assignee must make his election within a reasonable time, and will not be permitted to continue in the occupation of the premises unreasonably. But it is apparent from the conduct of the parties, that both the assignee and the lessor understood that the assignee had not elected to accept the lease, and, taking the view of the evidence most favorable to the lessor, it shows that there was negotiation between the parties as to the time when the assignee would remove the assigned goods from the premises, and the terms upon which he would do so at once. Moreover, the petition presented by the lessor to the county court seeks to recover, not entire rent, but a deficit that it was presumed would arise upon a re-renting for the residue of the term. We are of opinion that the courts below correctly held that there was no assignment of the lease by which the assignee, as such, became bound to perform its covenants.

The assignee having removed the assigned property from the leased premises, and given notice on the 30th of April, 1890, to the lessor, of the vacation of the premises, the lessor filed her petition in the county court, setting up the lease, the fact of the vacation of the premises, that in consequence of

the failure of the assignee to surrender prior to May 1, there would be a large loss by reason of the premises remaining vacant for an indefinite time, and the inability to obtain tenants for the immediate possession, and praying for leave to re-rent said premises for the account of the assignee, and that he be directed to reserve a sufficient sum to reimburse the lessor for the deficiency, if any, between such re-letting and the amount of rent reserved in the lease, etc. The assignee answered, and on the 28th day of May, 1890, the court having heard the evidence offered, postponed "for further consideration the final adjudication of the rights of the parties, and in order to prevent unnecessary loss to the estate and petitioner, orders that petitioner and assignee, both, are directed to secure a tenant for the remainder of the term at the highest and best possible rental. This without prejudice to the rights of either party in respect to the present controversy." On the 16th of October, 1890, the assignee presented his petition showing that the premises could be rented until the 30th day of April, 1891, to Henry M. Love, for $125 a month, and on the same day the court ordered the assignee to let said premises to said Love for a "term commencing October 6, 1890, ending April 30, 1891, at $125 per month, payable monthly, in advance, to said James Goodman, assignee," the said lease to be subject to a further provision that the lessee should vacate on and after the first day of January, 1891, on two weeks' notice,—which lease was accordingly made. On January 14, 1891, the lessor filed suggestions in said court, representing that she had an offer of leasing from February 1 to May 1, 1891, at a rental of $125 per month, and from May 1, 1891, to April 30, 1892, at $250 per month, being the same rent for that year as that reserved in the original lease. On the 17th of January, 1891, the court, after finding that the offer was a fair and reasonable one, ordered that the lease be made as suggested, "and that the assignee provide for the delivery of said premises on February 1, 1891." Thereupon, on

the 16th of February, 1891, the lessor filed her supplemental petition, setting out the various suggestions and petitions before filed, the orders of the court thereon, and the action of the respective parties taken thereunder, and that from the first of May, 1890, up to February 1, 1891, the assignee had paid her no rent for said premises nor was any received by her from any other source, and that she was entitled to receive therefor the sum of $2250, and that she was entitled to receive from the assignee $375, being the deficiency between the lease last made from February 1, 1891, to April 30, 1891, and the amount reserved in the original lease, and praying that her claim of $2625 be allowed against the assignee, "prior to the payment of any mercantile indebtedness."

From what has preceded, the assignee not having accepted the lease and become liable for the performance of the covenants, it is clear that the court correctly determined in refusing priority to the claim of appellant. The rent of the premises from the date of the assignment until their vacation by the assignee was properly paid and allowed to the assignee as expenses in the administration of the trust. (*Baker* v. *Singer,* 35 Ill. App. 271.) There is no claim, as indeed there could not be, against the assignee, other than in his trust capacity, for the rent of the premises.

The claim of appellant was against the insolvent estate. By reference to the seventh clause of the lease before mentioned, it will be seen that it was covenanted that if the lessee should abandon or vacate the premises the lessor might re-let the same, and the lessee covenanted to pay any and all deficiency that might exist between the sum realized upon the re-letting and the rents reserved. By the fourth paragraph of said lease the lessee covenanted not to allow the premises to be occupied, in whole or in part, by any other person; that it would not sub-let the premises or assign the lease without the written consent of the lessor first obtained, and would not permit any transfer, by operation of law, of the interest in the

premises acquired under the lease. That the covenants of this latter clause of the lease were violated upon the execution of the assignment, as well as by the subsequent entry thereunder of the assignee in the premises, is, in effect, conceded. The covenant against assignment of the lease was inserted for the benefit of the lessor, and he alone could insist upon the covenant. He may waive it, if he sees proper, and if he does not insist upon it no one else can. *Sexton* v. *Chicago Cold Storage Co.* 129 Ill. 318; 1 Wood on Landlord and Tenant, 711.

Counsel for appellee say: "The damage resulting to the lessor flowed from the act of the lessee, because * * * the assignee, by operation of law, became clothed with the right to elect whether to perform the covenants of the lease or not, without any liability to the lessor for electing not to accept such lease and perform its covenants. Such damage, therefore, for breach of the covenants of the lease, became a claim against the assignee which might be proven against the estate as any other claim." We concur in this view. There was, upon the execution of the assignment, an abandonment of the premises by the lessee. Under the seventh clause of the lease the lessor might at once re-let the premises for the term and charge the lessee with the deficiency.

The only remaining question is whether the presentation of the petition by the lessor, May 2, 1890, within three months from the expiration of the notice required by section 2 of the Voluntary Assignment act, should have been treated as a presentation of her claim against the estate of the insolvent. The parties, by their contract, had fixed the measure of damages at the difference between the amount realized upon the re-letting and the rent reserved. It could not be told within the period of limitation fixed by section 10 of that act, and at the time of filing the petition, what the damages would be. The lessor, by her petition duly verified, presented her claim to the county court, and proposed to proceed thereafter, in fixing her damages, under the direction of the court. With-

out determining the liability of the assignee to pay such damages when they should be ascertained, the court very properly postponed and continued the question of the liability of the assignee, as such, and, as we have seen, ordered and approved the renting of the premises, first, by the assignee to Love, and secondly, by the lessor for the residue of the term. The court having retained jurisdiction of the original petition and claim of the lessor, and a leasing having been made for the residue .of the term, so that the damages could be ascertained in the mode fixed in the contract of the parties, the lessor filed her supplemental petition and claim for the difference between the sum realized and to be realized under the re-letting and the rents reserved in the original lease. It is true that the lessor claimed and insisted upon priority over other creditors of the estate; but that in nowise affected her claim against the trust estate, if otherwise properly presented and allowable.

We are of opinion that, under the peculiar circumstances, the filing of the lessor's petition, duly verified, was a sufficient presentation of her claim against the estate of the insolvent, and that upon the filing of her supplemental petition and claim it was the duty of the court to allow the amount of the actual deficit to be paid *pro rata* with the general creditors, making such deductions and abatements from portions thereof not due as would be just and reasonable. The prayer of the supplemental petition is that the claim of the petitioner be allowed. True, it seeks priority in payment over "mercantile debts." That portion of the prayer was properly denied, but in our opinion the court erred in dismissing the original and supplemental petitions, and in refusing to allow so much of the claim as was shown to be just to be paid *pro rata* with other creditors.

For the error indicated herein, the judgments of the Appellate and county courts are reversed, and the cause is remanded to the latter court with directions to proceed in conformity with the views expressed herein.       *Judgment reversed.*