THE MEDINAH TEMPLE COMPANY

*v.*

ARTHUR L. CURREY, Assignee.

*Filed at Ottawa May 12, 1896—Rehearing denied October 13, 1896.*

1. LANDLORD AND TENANT—*forfeiture of lease upon assignment—effect of voluntary assignment.*  A lease providing for its forfeiture if the lessee assigns it without the written consent of the lessor, may be forfeited for a voluntary assignment by the lessee for the benefit of creditors, as such assignment transfers the interest of the lessee by his voluntary act, and not by operation of law.

2. SAME—*effect of receiving rent upon right to forfeit lease for broken condition.*  The right to declare a forfeiture of a lease because of a voluntary assignment for creditors by the lessee, is not waived by receiving rent from the assignee, after the assignment, for a period during which the assignee occupies the premises without making an election to accept or refuse the lease.

*Medinah Temple Co.* v. *Currey,* 58 Ill. App. 433, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the County Court of Cook county; the Hon. O. N. CARTER, Judge, presiding.

M. B. & F. S. LOOMIS, for appellant.

ELA, GROVER & GRAVES, for appellee:

*Weatherall* v. *Geering,* 12 Ves. 513, holds that, notwithstanding a covenant against assignment of the lease, the covenant is not violated by a voluntary assignment for the benefit of creditors.  This covenant only applies to

voluntary sales by the lessee. *Jackson* v. *Corliss,* 7 Johns. 534; *Jackson* v. *Silvernail,* 15 id. 279.

An assignee is not regarded as a purchaser, in this State. *Union Trust Co.* v. *Trumbull,* 137 Ill. 146; *Hardin* v. *Osborne,* 94 id. 571; *Jack* v. *Weiennett,* 115 id. 105; *O'Hara* v. *Jones,* 46 id. 288.

Conditions subsequent having effect, in case of a breach, to affect estates already vested, are not favored in law, and hence always receive a strict construction. Devlin on Deeds, sec. 970.

The condition is not broken, in any parting with the possession of the lease, when no transfer is executed, so as to make the party receiving it liable upon the cove-nants of the lease. 1 Wood on Landlord and Tenant, 717; 1 Taylor on Landlord and Tenant, sec. 408.

A lease passes to executors, and can be sold by them without leave of the lessor, unless the provisions against assignment are expressly extended to executors in terms. 1 Wood on Landlord and Tenant, (2d ed.) 719.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Appellant leased to the F. Halbe Baking Company certain property in the city of Chicago for the term of five years. The lease contained this condition: "The said lessee shall not assign this lease, or let or underlet said premises or any part thereof, without the written con-sent of the lessor," and provided for a forfeiture if the condition was broken. After the term had run some ten months the lessee made a general voluntary assignment for the benefit of its creditors, naming Arthur L. Currey as assignee, who took possession of the leased premises and afterwards claimed to hold the same under said lease. Appellant filed its petition in the county court of Cook county, where the assignment proceeding was pend-ing, praying that court to declare the lease forfeited under the above condition. This petition was denied, and it appealed to the Appellate Court, where the order

of the county court was affirmed, and it now brings the case to this court.

By agreement of parties the only questions presented for decision in the Appellate Court and here are, whether the condition was violated by the assignment so as to entitle the lessor to declare a forfeiture of the lease, and if it was, whether the right of forfeiture was waived by the subsequent acts of the parties.

The general voluntary assignment by the lessee no doubt had the effect to transfer its leasehold interest to its assignee. True, the assignee might have refused to take it, and would be understood to have done so if he had not expressly or by unequivocal acts accepted it. (*Smith* v. *Goodman,* 149 Ill. 75; Burrill on Assignments, sec. 374.) The latter question is not, however, involved here, it being admitted that there was a positive election on the part of the assignee to accept the lease prior to the filing of the petition in the county court.

We have held that a valid voluntary assignment under our statute transfers the title of all the assignor's property to the assignee. (*Davis* v. *Chicago Dock Co.* 129 Ill. 180; *Freydendall* v. *Baldwin,* 103 id. 325; *Lowe* v. *Matson,* 140 id. 108; *Smith* v. *Goodman, supra; Orr* v. *Hanover. Fire Ins. Co.* 158 id. 149.) In the latter case we said (p. 154): "Upon the execution and delivery of the deed of assignment all the title and interest originally held by the assignor passed from him to the assignee. His legal interest was gone and the right of possession was gone. The assignee was clothed with the right and power to sell and convey the property and distribute the proceeds among the creditors. After the assignment the assignor had no more control over the property than he would have in case of an absolute sale." It is clear, under these decisions, that a voluntary assignment of a leasehold estate, when accepted by the assignee, has the same effect as would the sale and transfer of the lease to a purchaser in the ordinary way.

But it is claimed the transfer in the case of a voluntary assignment is by operation of law, and therefore, under the well established rule of law, no breach of the assignor's condition. This position we regard as untenable. The act by which the title to the assigned estate is transferred from the assignor to the assignee is purely voluntary on the part of the former. Voluntary assignments for the benefit of creditors are transfers without compulsion of law. They are termed "voluntary" to distinguish them from such as are made by compulsion of law, as under statutes of bankruptcy and insolvency. (Burrill on Assignments, secs. 2, 3.) There can be no such thing as an involuntary assignment under our statute. (*Weber* v. *Mick,* 131 Ill. 520.) Therefore those authorities which hold that if the lessee makes an involuntary assignment the leasehold will pass by operation of law have no application here. The authorities generally seem to sustain the position that when an assignment by the lessee is a voluntary one, the lease does not pass to his assignee *by operation of law* but by act of the party, and the distinction in this regard between voluntary and involuntary assignments is well defined. (Wood on Landlord and Tenant, 716; *Holland* v. *Cole,* 1 H. & C. 67; *Rockford* v. *Hackman,* 9 Hare, 474; *Brandon* v. *Aston,* 21 Eng. Ch. 23.) While language is found in some of the cases cited by counsel for appellee which seems to sustain their contention, yet when the real questions for decision in those cases are considered, they are not in conflict with those cited above.

But without reference to authorities cited by counsel on either side, it cannot be held an assignment, under our statute, passes the estate of the assignor to the assignee relieved of the condition that an assignment without the consent of the lessor shall entitle him to a forfeiture. All our decisions are to the effect that the transfer is by the voluntary act of the assignor in executing and delivering the deed of assignment. No process of law what-

ever intervenes in order to vest the title in the assignee. In *Davis* v. *Chicago Dock Co. supra*, we said (p. 187): "The assignee, however, took no greater interest or better title than his assignors possessed. In his hands the title was affected with every infirmity and subject to all the equities that existed in respect thereof in the hands of the grantor in the deed of assignment." And section 11 of the act is to that effect. It is there provided that the assignee shall have as full power and authority to dispose of all the estate, real and personal, assigned as the debtor or debtors had at the time of the assignment. Clearly this language implies that he has no greater power or authority to dispose of property than had the debtor or debtors at the time the assignment was made. Hence to hold the assignment operated to extinguish the condition would be to maintain the inconsistent, not to say absurd, position, that while an assignment by the lessee would have been a violation of the condition, still the transfer of the lease by his assignee, who holds it subject to the same condition upon which he held it, will pass it free from the condition. We entertain no doubt that the voluntary assignment, under the law of this State, was a violation of the condition against assigning.

The other question is, was there by the subsequent acts of the lessor a waiver of the right to declare the forfeiture? We think not. It is contended by appellee that receiving rent from the assignee after the assignment was a waiver of that right. It appears from the agreed state of facts in the record, that upon the assignment being made and the assignee taking possession of the estate, which consisted of restaurant supplies and fixtures, in the leased premises, conversations took place between the president and general manager of appellant and the assignee and his attorney with reference to the assignee's occupancy of the premises, and both the assignee and his attorney stated to him that the rental stipulated in the lease would be paid by the assignee

during the time he occupied the premises. The assignee had not at that time declared his purpose to accept the lease, nor did he do so until after the payment of the rent which it is claimed operated as a waiver of the condition. The rent paid was for a month, commencing December 13, 1894, (the date upon which the assignee took possession,) and was not a payment of a month's rent according to the terms of the lease. Other facts appear in evidence from which it clearly appears that it was not the intention of either party that the payment of the rent by the assignee should be in any sense a recognition of his right to hold the property under the lease. We have already seen that the assignee had the right to accept or refuse the lease, and until he had made his election the lessor had a right to deal with him, as to the use of the property, without reference to the lease. The mere fact that its president arranged with him for the payment of rent during the time that he was using the property, without declaring his intention to accept it under the lease, in no way proved an intention to waive any condition of forfeiture. It was said in *Cheney* v. *Batten*, Cowp. 243, by Lord MANSFIELD, where the question was whether the acceptance of rent operated as a waiver upon the landlord: "The question, therefore, is, *quo animo* the rent was received and what the real intention of both parties was. If the truth of the case is that both parties intended the tenancy should continue, there is an end of the plaintiff's title; if not, the landlord is not barred of his remedy by ejectment." This clear and concise statement of the law is in harmony with all the authorities. Under the facts of this case we think it cannot be said that there was a waiver on the part of the lessor.

The judgment of the Appellate Court will be reversed.

*Judgment reversed.*