Williams, J.
It is a general rule that one who accepts the transfer of a leasehold estate takes it subject to the terms and conditions of the lease, and becomes bound for the performance of all the covenants-of the lessee; and he is therefore liable directly to the lessor for the rent. The question here is, how far, if' at all, that rule is applicable where, as in this case, the lessee holding an unexpired term, makes an assignment, under our statute, of all his property for the benefit of his creditors. It would probably not be controverted that, whatever beneficial interest Neff held by virtue of his lease was a property right which was included in, and passed under, the' general assignment, and which the assignees, if' deemed of sufficient value by them, might have brought to sale. The proceeds of the sale would belong to the trust fund to be administered. In the event of such sale the purchaser would become the assignee of the lease, and bound on the lessee’s covenants. But, if the leasehold estate be of no value, or of less value than the burden it imposes on the lessee, so that its acceptance by the assignee in insolvency instead of being for the benefit of the creditors, would materially jeopardize their claims, is the assignee bound to accept the transfer of the leasehold interest subject to the burdens of the lease, or, is he at liberty, without incurring individual liability, to reject it in the interest of the creditors? That is the practical question in the case. Some English cases. *393 are found which hold that an assignment for the benefit of creditors which includes a term of years, must be given the same effect, with respect to the liability of the assignee, as other assignments of a lease; and, consequently, an assignee in insolvency who accepts the trust has no discretion to reject the term with its burdens; the only way to escape personal liability on the lessees’ covenants being to decline the appointment. The assignments in these cases appear to have been made under the common law, and their effect and mode of administration, in many respects, were essentially different from that of assignments by insolvent debtors under our statute. By the former, the powers and duties of the trustee were defined, and the manner of distribution regulated, by the instrument of assignment, which became an agreement with the creditors who chose to come into the assignment. Those creditors alone became entitled to participate in the fund, and then only in the mode, and to the extent, prescribed in the instrument, which, in its construction and operation was governed by the rules applicable to contracts. An assignment under the statute is something different. The assignee is required to file the instrument of assignment in the proper court of insolvency, and qualify by taking a prescribed oath and giving sufficient bond to insure the faithful execution of his trust. That gives the court jurisdiction over him, and the assigned property, and parties interested. Whatever terms and conditions may be contained in the deed of assignment to the contrary, the statute determines its effect and operation to be for the equal benefit of all the assignor’s creditors in the order provided in the statute, and defines the powers, duties, and course of proceeding, of the assignee, for the accomplishment of a final *394 distribution of the assigned property in accordance with specific requirements of the statute; and, from the beginning to the conclusion of the administration the assignee is under the control, and subject to the orders, of the court. The assignee acquires no personal interest in the property assigned, and is little more than a mere instrumentality, like a ministerial officer, in the hands of the court, for the purpose of effectuating a proper and speedy execution of the trust. So long, therefore, as his proceedings, conform to the commands of the statute and of the court having power to regulate his conduct and settle his accounts, there appears to be no sound principle upon which he could be made personally chargeable with any obligation of his assignor. It would seem to be enough to charge him with such liability Avhen he is guilty of a violation of his duties, and not for their faithful performance,
In his relation to the assignor, the estate assigned, the creditors for whose benefit the assignment is made, and to the court, as well as in the method of procedure for the administration of the trust, his position is much like that of assignees in bankruptcy, with respect to whom it has long been the settled rule, that they were not bound in accepting the trust, to accept a term of years that belonged to the bankrupt, subject to the rent and covenants; and without such acceptance they did not become personally responsible to the lessor. The reason of this rule, as stated by Lord Ellenborough, in Gopeland v. Stephens, 1 Barn. & Ald., 593, is that “the object of the statute and of the.assignment being the payment of the bankrupt’s debts, and the assignees under the commission being trustees for that purpose,.the acceptance of the term, which, instead of furnishing means of such payment, would diminish the fund arising from other sources, *395 cannot be within the .scope of their trust or duty.” This reason applies with equal force in a case of assignment under our statute. And we accordingly find that, in this country, this rule adopted in bankruptcy cases is applied to voluntary assignments of insolvent debtors. In Burrill on Assignments, page 475, that author says: “Where a debtor, being a lessee of premises, makes a general assignment of all his property for the benefit of his creditors, and the assignee simply accepts the assignment, he will not be bound as assignee of the lease for the payment of rent to the landlord of the premises, but if he elects to accept the interest of the assignor and to enter under it, he becomes so bound.” In Trust Co. v. Wabash Ry. Co., 150 U. S., 299, the court say: “The general rule applicable to this class of cases is undisputed, that an assignee or receiver is not bound to adopt the contracts, accept the leases, or otherwise step into the shoes of the assignor, if in his opinion it would be unprofitable or undesirable to do so; and he is entitled to a reasonable time to elect whether to adopt or repudiate such contract.”
In Smith v. Goodman, 149 Ill., 75, that court said: “It might very well be that a term, of years in land might be so burthened with the performance of conditions that it would be wholly valueless for any purpose of the trust. For that reason it has uniformly been held that the assignee may accept the assignment and enter upon the execution of the trust without becoming the assignee of the lease held by the insolvents, unless he elects to do so.” In volume 3, Second Edition of the Am. & Eng. Ency. of Law, pages 125-6, it is laid down as the settled rule, that: “An assignee for the benefit of creditors, who accepts the trust, is not *396 bound to accept a leasehold estate included in the assignment, and, if he does not elect to do so, is not liable as assignee of the lease;” and, he “does not become personally liable for the rent of premises leased to the assignor, by continuing in possession for the-sole purpose of executing his trust, if such continuance was consistent with ordinary prudence.” A number of American cases are there cited which sustain the text; and we find none to the contrary. We-are relieved of any necessity of determining in this, case what possession or acts of the trustee would amount to an acceptance of the lease, for the trial court found, not only that there was no acceptance-by the defendants in error, but that they expressly rejected it, by notice in writing, soon after the assignment was made, and took no possession of the leased premises. We also find it unnecessary to pass upon the plea of res adjudicata.
If the action had been against the assignees of Neff to compel them, in their trust capacity, to allow the plaintiffs’ demand for the rent accruing under the-lease, and for the unpaid taxes and assessments, as a valid claim entitled to participate, in its proper order, in the distribution of the fund arising from the assigned property, the facts of this case, would have required a judgment different from that rendered by the-courts below. For the assignment did not terminate the lease, nor discharge the obligation of the lessee to pay the rents, taxes, and charges according to its covenants. On the contrary, these obligations continued to be a liability of the lessee which might be made the basis of a valid claim by the lessors, as. general creditors, entitling them to share, in the-proper order, in the distribution of the fund that came-to the hands of the assignees in virtue of the assign *397 ment. And it could be no valid objection to tbe allowance of such claim, or its participation in the trust fund, that the rent, or any part of it, had not become due at the time of the assignment, or its distribution, unless the lessors had re-entered, or otherwise put an end to the lease. In that respect the claim must stand on the same footing as other unmatured debts of the assignor. Smith v. Goodman, 149 Ill., 75.
The purpose of the action below, however, was to .'hold the persons to whom the assignment was made, individually liable on Neff’s covenants in the lease, •on the ground that, by accepting the assignment for the benefit of his creditors they became assignees of the lease, and so bound for his obligation to pay the rent reserved, taxes, and the other charges. And the lower courts properly held, we think, that the defendants were not so liable.

Judgment affirmed.