## Angelo Vintaloro, Appellee, v. Tom Pappas et al., Appellants.

### Gen. No. 27,359.

FORCIBLE ENTRY AND DETAINER—*forfeiture not waived by receipt of rent after notice to tenant to quit where lease so provides.* Receipt and acceptance of rent by the lessor after notice to the tenant to quit because of forfeiture for violation of covenants of the lease do not constitute a waiver of the forfeiture, even though the lessor accepted the rent with full knowledge, where the lease provides that "payment of rent shall not waive or effect" notice, suit or judgment for possession; and such receipt and acceptance of rent constitute no bar to an action for forcible detainer.

Appeal by defendants from the Municipal Court of Chicago; the Hon. T. A. GRAHAM, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1921. Affirmed. Opinion filed February 16, 1923.

MAX C. LISS, for appellants; HAYDEN N. BELL, of counsel.

ERNEST C. RENIFF and DANIEL WEBSTER, for appellee.

MR. JUSTICE TAYLOR delivered the opinion of the court.

On June 29, 1920, the plaintiff, Angelo Vintaloro, filed a complaint in forcible detainer against the defendants, Tom Pappas, William Huliaras and Gust Huliaras, claiming that they unlawfully withheld possession of the first floor of the premises located at 1658 West 12th street, Chicago. On July 13, 1920, there was a trial, an instructed verdict and judgment for the defendants. An appeal was taken to this court, the judgment of the municipal court was reversed, and the cause remanded for a new trial. [221 Ill. App. 641, abst.]

On July 8, 1921, there was a new trial, an uninstructed verdict, and a judgment for the plaintiff. From that judgment this appeal was taken.

On January 15, 1919, the plaintiff and the original

lessees, Domas and Condiss, entered into a written lease, of a certain first floor store room at 1658 West 12th street. The term was from May 1, 1919, to April 30, 1927. The total rent was $20,100, payable in monthly instalments of $200 up to April 30, 1924, and, thereafter, $225 monthly. The premises were to be used solely for the storage and sale of confectionery and ice cream. Above the store were two apartments. Paragraph 18 of the lease is as follows:

"The lessees hereby further covenant and agree that no piano playing, singing or any other form of amusement shall be kept and maintained in said premises, without permission from the lessor first had and obtained in writing."

Paragraph 20 is as follows:

"The lessees hereby agree that after the first day of May, A. D. 1919, they will insure all the plate glass on the premises in a reputable company, to be approved by the lessor and to deliver said policy over to said lessor."

Paragraph 21 recited that the lessees had deposited $1,000 with the lessor as security for the faithful execution of the conditions of the lease.

There is in the lease, also, the following provision:

"It is further agreed by the parties hereto, that after the service of notice or the commencement of a suit, or after final judgment for possession of said premises, the lessor may receive and collect rent due, and the payment of rent shall not waive or effect said notice of suit or judgment."

On July 11, 1919, the lessees assigned the lease, with the written consent of the plaintiff, to the defendants, and the latter went into possession. Some time in the latter part of May, 1920 (the record does not show the exact date), the plaintiff served a written notice on the defendants notifying them that by reason of a breach of the covenants contained in paragraphs 18 and 20 (as to piano playing and plate glass insurance) the lease would be terminated on May 31, 1920. The

first paragraph says May 31, and the last paragraph May 21. That notice also contained a demand for possession on May 31, 1920.

As regards paragraph 18, providing that no piano playing shall take place in the premises: The evidence conclusively shows from the testimony of the defendant, William Huliaras, and others, that a piano was played on the premises from July 19, 1919, practically continuously up to and including April and for some time in May, 1920, in violation of the clause in question. According to the testimony of the plaintiff "it was a great big electric piano like a sledge hammer."

The witness Peterson, for the plaintiff, testified, though with some vacillation, that the piano was played some time in the early part of May, 1920. Some testimony was admitted on the part of the defendants to the effect that at the time of the assignment of the lease to the present defendants, the plaintiff told them that they could play the piano if they desired. That was testified to by Tilley, the lawyer who represented the defendants, the defendants, Gust Huliaras, William Huliaras and Pappas.

As to the violation of clause 20, providing for plate glass insurance: The plaintiff testified that no insurance policy on the plate glass was delivered to him until after he started suit; that then one was offered to him by one of the Huliaras. Gust Huliaras testified that he offered a policy of insurance to the plaintiff on the second of August, 1919; that the plaintiff told him to keep it; that he offered it again in September, October and November, 1919, and that each time he offered it the plaintiff said for him to keep it. The defendant, William Huliaras, also testified that he was present when his brother, in August, 1920, tendered the insurance policy to the plaintiff, and that the latter said for Huliaras to keep it; that that was on August 2, 1919, in front of the store; that his broth-

er had the policy in his hands, having just taken it from the safe. This was denied in rebuttal, by the plaintiff, who then testified that no insurance policy was offered to him by anyone until at the first trial in May, 1920; that he did not know anything about the policy until the agent sent him a copy.

As to the receipt of rent by the plaintiff: He testified on cross-examination that he took rent for each of the months of August, September, October, November and December, 1919, and that the defendants continued playing the piano on the premises during all those months; that in January he told the defendant, Pappas, that one of the tenants had complained and that he would like him to stop the piano playing, but that he also took rent for that month; that in February, 1920, he took the rent for January although he knew that the defendants were continuing to have the piano played, as on several occasions he requested them to stop; that he did the same with regard to February rent despite the fact that they kept on playing the piano, likewise as to the March and April rent. When asked if during all those months, for which he took the rent, he knew that the piano was being played, contrary to the provisions of the lease, he answered, yes. He also testified that he took the rent for the months of May and June, 1920. The first month for which the rent was refused was July, 1920. The last time the piano was played was some time in May, 1920, but it was not played after the service of the notice, that is, after the latter part of May, 1920.

It is contended on behalf of the defendants that the receipt of rent by the plaintiff, after he knew certain clauses of the lease had been violated, amounted to a waiver of such breach regardless of the intention or state of mind of the plaintiff.

On the other hand, it is the contention on behalf of the plaintiff that the question, under what circumstances he received the rent, and the question, whether

the provisions in the lease were violated, were for the jury and were both decided properly in his favor.

When this cause was in this court before, the record in that case shows that it was tried apparently upon another notice, and the trial judge held that as the plaintiff had received rent from month to month knowing all the time that piano playing was going on in the premises, he thereby waived the provision in the lease against piano playing and, being of that opinion, the trial judge instructed a verdict for the defendants. On appeal of that case to this court it was held that the evidence did not tend to show that the lessor intended by the receipt of rent, meaning, of course, rent received prior to the service of the notice, to waive his rights to declare a forfeiture of the lease. In the opinion in that case the following is stated: "The evidence tends to show that the lessor did not receive or accept rent for the premises after the service of notice of his election to terminate the lease," etc. Now, upon this appeal, the contention is made, as stated above, that the acceptance of rent subsequent to the date fixed for the termination of the lease in the notice that was served, constitutes, *ipso facto,* a waiver.

In *Watson v. Fletcher,* 49 Ill. 498, it was held, in an action of forcible detainer brought on the ground that a lease had been forfeited for the nonpayment of taxes, that the acceptance thereafter from the lessee of the year's rent in advance and the subsequent assignment of the lease to a third person, amounted to a waiver of the forfeiture.

In *Webster v. Nichols,* 104 Ill. 160, the court said: "It is well settled that 'any act done by a landlord knowing of a cause of forfeiture by his tenant, affirming the existence of the lease, and recognizing the lessee as his tenant, is a waiver of such forfeiture. (1 Williams' Saunders, 287; 2 Platt on Leases, 471; 1 Washburn on Real Property, 454.) The receipt of

rent subsequently accruing from the tenant by the landlord is such an act, and the forfeiture thereby waived. *Bleecker v. Smith,* 13 Wend. (N. Y.) 530; *Jackson v. Allen,* 3 Cow. (N. Y.) 220, and authorities cited by Sutherland, J., 230.' "

In *Hopkins v. Levandowski,* 250 Ill. 372, the court said: "If the landlord has by some act recognized the existence of the tenancy subsequent to the time he might have declared the forfeiture, such right of forfeiture is thereby waived. * * * It is not essential that the landlord should actually have in mind the waiving of the forfeiture. * * * A notice to quit has been held such a waiver." *Stromberg v. Western Tel. Const. Co.,* 86 Ill. App. 270.

In *Krygsman v. Stamatakos,* 175 Ill. App. 583, which involved the alleged violation of a provision in a lease prohibiting the subletting of the demised premises without the written consent of the landlord, the court said: "The acceptance of rent by the landlord, or demand by him for the payment of such rent, for a period of time after a breach of such stipulation has occurred and with knowledge of such breach, is a waiver by him of his right to declare a forfeiture therefor."

It is insisted on behalf of the plaintiff that a waiver is a question of intention, in other words "the question is *quo animo* the rent was received, and what the real intention of both parties was?" It is the rule that the debtor who pays money may determine the conditions upon which it is received. As the court said in *Kenny v. Seu Si Lun,* 101 Minn. 253: "The general principle is certain that money tendered by the tenant and received by the landlord as rent is paid as rent, and operates to bar the landlord from asserting against the tenant past causes of forfeiture under the terms of the lease which were known to him at the time of such payment." The court in that case shows the antiquity of the rule, citing Coke on Little-

ton, and other ancient references. In the instant case, the plaintiff does not dispute that he received the money as rent both for the months of May and June, 1920; in fact he, himself, testifies that he received the rent from the defendant for some months, and received it after the service of the notice which was dated some time the latter part of May, 1920.

Counsel for the plaintiff has cited *Medinah Temple Co. v. Currey,* 162 Ill. 441. In that case, however, the money was paid, not by the lessee, but by the lessee's assignee under a voluntary assignment for creditors, and the court held that as the assignee at the time he paid the money to the lessor had not declared it his purpose to accept the lease and be bound by it, that the conduct of the lessor in receiving the money did not constitute a waiver of the right to declare a forfeiture.

It is claimed, however, that even if the receipt for the subsequently accruing rent, that of May and June, did, without more, constitute a waiver of the forfeiture, nevertheless, the clause which provides that the lessor may receive "rent due" and that "the payment of rent shall not waive or effect said notice of suit or judgment" without waiving his rights under the service of the notice, prevents the application of the general principle of law in regard to the waiver for forfeiture by acceptance of rent and, so, leaves the notice in full force and effect and a sufficient basis for a suit for possession.

The words in question do give some scope for argument. The words "rent due," with nothing further, are in the past tense, and, therefore, with that connotation and without considering their context, do not seem to pertain to rent which at the time of service of the notice has not yet accrued. Then, too, in determining the meaning of the clause in question, it must be borne in mind that whatever leniency, if any, is from necessity indulged in, must be towards the lessee

rather than towards the lessor. However, reading the whole clause and considering the particular words just referred to, and bearing in mind particularly the words, "the payment of rent shall not waive or effect said notice," we are impelled to the conclusion that the intention of the parties, as therein expressed, was that the landlord had the right, even after the service of the notice, to accept money from the tenant for the use and occupation of the premises subsequent to the date of the notice and to accept it under the title of rent. In 16 R. C. L. 1133, this language occurs: "If the parties expressly stipulate that the lessor's receipt of the rents shall not prejudice his right to enforce the prior forfeiture, effect, it seems, will be given to such stipulation." In support of that statement a reference is made to Ann. Cas. 1915A 1251, and thereunder are cited a number of cases. In none of those, however, was the exact matter here involved passed upon. The construction of the clause in question seems to be a matter of new impression.

We have given the matter considerable thought, and have concluded that, under the lease in question, the receipt of past due rent did not constitute a waiver.

Finding no error in the record the judgment of the municipal court is affirmed.

*Affirmed.*

THOMSON, P. J., and O'CONNOR, J., concur.